643 P.2d 1054

The CIVIL RIGHTS DIVISION OF the ARIZONA DEPARTMENT OF LAW, Plaintiff/Appellant/Cross Appellee,

v.

VERNICK PLUMBING AND HEATING CO., INC., Defendant/Appellee/Cross Appellant.

No. 2 CA–CIV 4086.

Court of Appeals of Arizona, Division 2.

April 9, 1982.

Robert K. Corbin, Atty. Gen. by Philip A. Austin, Asst. Atty. Gen., Phoenix, and Philip G. Urry, Asst. Atty. Gen., Tucson, for plaintiff/appellant/cross appellee.

Law Offices of Gerard R. O'Meara by Gerard R. O'Meara, Tucson, for defendant/appellee/cross appellant.

OPINION

HOWARD, Chief Judge.

This is an employment discrimination action. The case was tried to the court, sitting without a jury, which made extensive findings of fact and conclusions of law. The record shows that Kate McGee was a computer programmer for Kelon Corporation. Kelon sold a computer to Vernick Plumbing and Heating Co. (Vernick) and McGee trained Vernick employees to use it. After this, she left Kelon Corporation and began working for Vernick, training employees in the use of the computer and doing pricing and other clerical jobs. She became bored and when she told the president of Vernick, Seymour Vernick, that she wanted to resign, he raised her pay from $4 an .hour to $5 an hour and told her she

would start to learn estimating. Subsequently, in addition to other duties, she began working as a plumbing estimator-trainee. After she commenced her training period, a male, Kevin Warner, was hired in the same capacity. When McGee discovered that Warner was being paid ten cents an hour more, she went to Seymour Vernick and complained. He told her he wouldn't pay her as much as Warner because she had a husband who worked and she didn't need more money. Furthermore, he said Warner needed to be paid more than she did because he had a family to support.

On April 13, 1979, McGee filed a wage discrimination complaint against Vernick with appellant. Not knowing that the complaint had been filed, Vernick offered to pay her ten cents an hour more, but did not offer to make it retroactive. McGee told Vernick that it was too late since she had filed a discrimination charge. When Vernick heard this, he became angry with her and left her office in a rage, stating that he wished he had never met her. On April 27, 1979, McGee filed an additional charge with appellant alleging that her plumbing estimator-trainee job had been eliminated because she had filed the wage discrimination charge. On May 3, she resigned her employment.

Subsequent investigation by appellant showed that the estimator-trainee position was not eliminated in retaliation for her filing the discrimination charge. However, unable to come to a satisfactory arrangement with Vernick, this lawsuit was filed. There were two main issues to be decided by the trial court. (1) Was Vernick guilty of wage discrimination? (2) Did Vernick make McGee's working conditions so intolerable so as to constructively discharge her? The trial court found that there was no constructive discharge but found that Vernick was guilty of wage discrimination and awarded McGee back pay in the sum of $859.01. Both parties contend that the findings of fact made by the trial court do not support its legal conclusions. Appellant

further contends that the trial court erred in not adopting one of its proposed findings. We affirm.

A.R.S. § 41–1464 makes it an unlawful employment practice to discriminate against an employee because of the filing of a charge of unlawful employment practices with the Civil Rights Division. An employer engages in prohibitive conduct if he discharges an employee in retaliation for the filing of such charges. See *Monteiro v. Poole Silver Company*, 615 F.2d 4 (1st Cir. 1980); *Whatley v. Metropolitan Atlanta Rapid Transit Authority*, 632 F.2d 1325 (5th Cir. 1980);[1] Larsen, Employment Discrimination, Vol. 3, § 87.20 (1981).

McGee resigned. It has been held, however, that an employer is still guilty of prohibitive conduct if in retaliation for the filing of the charges, working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Bourque v. Powell Electrical Manufacturing Company*, 617 F.2d 61 (5th Cir. 1980). This is known as constructive discharge. There is also authority which holds that in order to constitute a constructive discharge, the imposition of intolerable working conditions must be with the purpose of forcing the employee to resign. See *Muller v. United States Steel Corporation*, 509 F.2d 923 (10th Cir. 1975); *Padilla v. Stringer*, 395 F.Supp. 495 (D.N.M.1974). We believe such a rule is inconsistent with the realities of modern employment and adopt the rule in *Bourque*.

On the issue of constructive discharge, the trial court made the following findings relative to working conditions as they existed after the filing of the wage discrimination charges:

"67. On hearing that Kate McGee had filed a complaint concerning her wages, Seymour Vernick became livid and extremely angry. He screamed at her that she should have thought of him as a person. He finally left her office in a rage, stating that he wished he had never met her.

1. Because of the similarity between our statutes and the federal statutes, 42 U.S.C.A. §§ 2000e–2 and 2000e–3, we find the federal cases persuasive.

68. When Kate McGee returned to work the next Monday, she perceived that there was a great deal of tension in the air.

69. When she entered her office that Monday, she noted immediately that a new employee, Chuck Ohswaldt, was seated in her office at the drafting table she had been using up to that point to do her estimating on.

70. At no point on that Monday or before had Seymour Vernick informed Kate McGee that a new employee would be sharing her office and taking over the drafting table she had been using.

71. Later that Monday, Kate McGee asked Seymour Vernick what she was supposed to use to do her estimating on. Seymour Vernick told her to use the table and angrily said to her, 'Do I have to get a goddamed lawyer for every thing that happens in this office?'

72. After Kate McGee filed her charge of employment discrimination on April 13, 1979, Seymour Vernick assigned no further estimates to her for her to prepare.

73. After Kate McGee filed her charge of employment discrimination on April 13, 1979, Seymour Vernick did not cease having plenary discussions with Kate McGee concerning estimates she had completed.

74. The tension in Defendant's office after the filing of Kate McGee's charges caused her to have frequent migraine headaches.

75. The changes in Seymour Vernick's behavior toward Kate McGee after she filed her charge of discrimination against Defendant on April 13, 1979 were deliberate, but did not make the workplace intolerable.

76. Kate McGee was not forced to resign her employment with Defendant on May 3, 1979.

77. The Defendant did not retaliate against Mrs. McGee after she filed her first sex discrimination charge.

78. When Mrs. McGee quit her job with the Defendant, the Defendant had no knowledge of the fact that Mrs. McGee had filed a second sex discrimination charge.

79. Work conditions were never so intolerable at Defendant's place so as to cause Mrs. McGee to quit her job.

80. The Defendant never intended to retaliate against Mrs. McGee, nor did the Defendant ever intend to make Mrs. McGee quit her job with the Defendant. * * * ''

The law relative to our review of the trial court's findings of fact is clear. We are bound by the trial court's findings unless they are clearly erroneous, giving due regard to the opportunity of the trial court to view evidence and weigh the credibility of the witnesses. *Donahoe v. Marston*, 26 Ariz.App. 187, 547 P.2d 39 (1976). If the trial court's findings are supported by reasonable evidence or based on reasonable inferences drawn from conflicting evidence, the findings will not be disturbed on appeal. *United Security Corporation v. Anderson Aviation Sales Co., Inc.*, 23 Ariz.App. 273, 532 P.2d 545 (1975). Where the trial court's necessary findings are based on a conflict in evidence, they will not be disturbed on appeal. *Gressley v. Patterson Tillage & Leveling, Inc.*, 119 Ariz. 154, 579 P.2d 1124 (App.1978). A reviewing court must assume from any judgment the findings necessary to sustain it if such additional findings do not conflict with express findings and are reasonably supported by the evidence. *Hueg v. Sunburst Farms (Glendale) Mutual Water and Agricultural Company*, 122 Ariz. 284, 594 P.2d 538 (App.1979).

The transcript shows that after Vernick's initial reaction to the filing of the wage discrimination charges, there was tension between him and McGee. There was also some tension between the other employees. The relationship between Vernick and McGee cooled, not an unexpected result since one cannot expect that any employer would be happy about being formally charged with sex discrimination. However, Vernick still went over the remaining estimates with her, discussing various aspects of the work with a view of improving her

ability to do estimates. It is true that no new estimates were given to her after the filing of the wage discrimination charges, but neither were any given to Kevin Warner since the full-time estimator was discharged and the company went back to its former method of having the estimates done by Vernick and personnel who actually did the contracting jobs.

As for the new employee, McGee did not feel that the sharing of her office space with him was intolerable. She did resent his being given the drafting table, but at the time she quit, she did not need it because she had gone back to the computer and price clerking. In light of the above, we find that the record supports the trial court's conclusion that there was no constructive discharge.

■ Appellant contends that the trial court erred in not adopting its proposed finding No. 65 which stated:

"In the morning of April 19, 1979, Seymour Vernick summoned Kate McGee into his office. After a discussion concerning Kate McGee's time card, Seymour Vernick said angrily to Kate McGee words to the effect of: 'Spencer has left and you're getting fired too, so keep that in the back of your mind, honey.'"

McGee was the only one who testified as to this conversation. Since it was uncontradicted, appellant contends that the trial court erred in not adopting it. We do not agree.

The rule is correctly summarized in M. Udall, Arizona Law of Evidence § 3 at 10 (1960), as follows:

"... As a general rule the jury or other trier of fact is the sole judge of the witnesses' credibility and is not required to accept the evidence of an interested party, even though uncontradicted. But this general principle is qualified by several important exceptions. The trier of fact may not arbitrarily reject uncontradicted evidence of a party when nothing intrinsic in the evidence itself or extrinsic in the circumstances casts suspicion upon it. Nor may it be rejected where it is corroborated by a disinterested witness or an independent document."

Since Vernick continued the plenary discussions with McGee concerning her bids and since Vernick did nothing thereafter indicative of any intent to fire her, the trial court might well have believed that the conversation did not take place.

Appellant has raised other issues which we need not decide in view of our resolution of this appeal.

■ As for the cross-appeal, the transcript of the evidence and the findings of the trial court support the conclusion that McGee was intentionally paid less than Kevin Warner for doing the same job. The reasons given by Vernick for paying her less were clearly based upon an unlawful consideration, the fact that she was a female. The trier of fact could have concluded that Vernick intentionally paid her a lower hourly wage from the start of her training period even though Warner had not yet been hired.

Cross-appellant also contends that the record does not contain any evidence as to how long she worked and, therefore, does not support any hourly computations of discriminating wage differentials. We do not agree. There was evidence that she was working a 40-hour week.

Affirmed.

HATHAWAY and MICHAEL J. BROWN, Superior Court Judge, concur.

NOTE: Judge BEN C. BIRDSALL having recused himself in this matter, Judge MICHAEL J. BROWN was called to sit in his stead and participate in the determination of this decision.