680 P.2d 833

**The STATE of Arizona, ex rel., The Honorable Robert K. CORBIN, the Attorney General, and the Civil Rights Division of the Arizona Department of Law, Applicant/Appellant,**

v.

**A.B. WEAVER, Respondent/Appellee.**

**No. 2 CA–CIV 4986.**

Court of Appeals of Arizona,
Division 2.

March 22, 1984.

Robert K. Corbin, Atty. Gen. by Phillip A. Austin and Judy Drickey-Prohow, Asst. Attys. Gen., Phoenix, for applicant/appellant.

Scott W. Schlievert, Tucson, for respondent/appellee.

## OPINION

BIRDSALL, Chief Judge.

This action arose out of a subpoena enforcement proceeding brought by appellant Arizona Civil Rights Division (Division) against appellee University of Arizona (University) through its agent, A.B. Weaver, pursuant to A.R.S. § 41–1403.[1] The

---

1. "Right to examine and copy evidence; summoning witnesses and documents and taking testimony; right to counsel; court aid; process; service and return; fees of witnesses

A. In connection with the investigation of a charge filed under this chapter, the division or its duly authorized employees shall at all reasonable times have access to, for the purpose of examination, and have the right to copy any evidence of any person being investigated, provided such evidence relates to unlawful practices covered by this chapter and is relevant to the charge under investigation.

B. For the purpose of all hearings and investigations conducted by the board or division:

1. The division, on its own initiative, or upon application of any party to the proceeding, may issue subpoenas compelling the attendance and testimony of witnesses or requiring the production for examination or copying of documents provided such evidence relates to unlawful practices covered by this chapter and is relevant to the charge which is the subject matter of the hearing or investigation. Within five days after the service of a subpoena on any person requiring the production of any evidence in his possession or under his control, such person may petition the division to revoke, limit or modify the subpoena. The division shall revoke, limit or modify such subpoena if in its opinion the evidence required does not relate to unlawful practices covered by this chapter, is not relevant to the charge which is the subject matter of the hearing or investigation, does not describe with sufficient particularity the evidence whose production is required, or is unduly burdensome or oppressive. Any member of the division, or any agent designated by the division may administer oaths or affirmations, examine witnesses and receive such evidence.

2. Any person appearing before the division or the board shall have the right to be represented by counsel.

3. The superior court, upon application by the division or by the person subpoenaed, shall have jurisdiction to issue an order (a) requiring such person to appear before the division, the board or the duly authorized agent of either, there to produce evidence relating to the matter under investigation if so ordered, or (b) revoking, limiting or modifying the subpoena or conditioning issuance of the subpoena upon payment of costs or expenses incurred to comply with the subpoena if in the court's opinion the evidence required does not relate to unlawful practices covered by this chapter, is not relevant to the charge

trial court refused to require the University to produce certain documents pursuant to the Division's subpoena of Weaver.

The case was commenced administratively by Dr. John C. Reinbold who, on August 2, 1982, filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging that he had been discriminatorily terminated from his employment with the University because of his age and his sex. The EEOC referred that charge to the Division on August 19, 1982. The Division then processed the charge as provided by A.R.S. § 41–1481 and began its investigation.

On March 28, 1983, the Division issued to A.B. Weaver an administrative subpoena duces tecum which called for the testimony of Weaver and the production of documents compiled or reviewed during the University's Affirmative Action Office investigation of Reinbold's complaint.[2] On April 4, 1983, the University delivered to the Division a Petition to Revoke, Limit and/or Modify the subpoena in question. The Division denied this Petition on April 5, 1983. Weaver did not appear and the University did not produce the requested documents when the subpoena was returnable on April 6, 1983.

On April 14, 1983, a meeting between legal representatives of the Division and the University took place during which time the parties attempted to resolve the dispute concerning the disputes in the Affirmative Action Office files. During that meeting, the University agreed to produce all documents in the file except those which they believed to be privileged.

When these documents had not been produced by April 25, 1983, the Division commenced this subpoena enforcement action by filing an Application for Order to Show Cause and Order Enforcing Subpoena. That Application sought to require the University to show cause why it should not produce the materials sought in the subpoena of March 28, 1983, and an order of the court requiring such production. The following day the University produced some of the documents sought and a letter explaining a claimed basis for confidentiality of the remaining documents. That letter read as follows:

"Enclosed you will find a number of documents that are being provided to the Division in response to the Division's request for information concerning the internal investigation conducted by the University Affirmative Action Office, specifically by Dr. Felix Goodwin, concerning Dr. Rheinbold's [sic] allegations of employment discrimination with respect to his termination.

The documents being provided to you were prepared, compiled or reviewed in connection with the University's investigation of Dr. Rheinbold's [sic] internal complaint of discrimination.

There are some memoranda, reports and documents which are not being provided to the Division, copies of which are located in the Affirmative Action Office investigative file, because those documents are considered to be privileged or otherwise non-discoverable. The following is a list of those documents:

---

which is the subject matter of the hearing or investigation, does not describe with sufficient particularity the evidence whose production is required or is unduly burdensome or oppressive. Any failure to obey such order of the court may be punished by such court as a contempt."

\* \* \* \* \* \*

2. The subpoena, in para materia, provided:

"*Bring with you and produce then and there the following:* All documents, files, and papers in your possession, or subject to your control that are necessary or appropriate to enable you to answer fully the questions at-

tached hereto and incorporated herein by this reference.

. . . . .

1. Please state *the results of the internal* investigation conducted by Respondent of Charging Party's complaint of discriminatory or unfair treatment.
2. Please attach copies of any papers, reports, documents, or other written memoranda that were prepared, compiled or reviewed in connection with Respondent's investigation of Charging Party's complaint of discriminatory or unfair treatment." (emphasis in original)

| Document | Reason for Non-Disclosure |
|---|---|
| 1. Confidential Memorandum dated June 21, 1982 from Floyd A. Swenson to Robert A. Peterson. | Irrelevant, does not relate to Affirmative Action issues. |
| 2. Memorandum dated June 21, 1982, from Dr. Felix Goodwin to Dr. Jean Kearns, preliminary Affirmative Action investigative report. | Irrelevant; contains conclusions and opinions; prepared in anticipation of litigation or administrative action; contains self-critical analysis; work product privilege. |
| 3. An undated document from Dr. William Clauss to Dr. Felix Goodwin containing responses to investigative questions. | Irrelevant; contains conclusions; work product privilege; witness is available to be interviewed. |
| 4. Investigative notes of Dr. Goodwin; the following people were interviewed: John Edwards, Robert Conter, William Clauss, John Rheinbold, [sic] Cathy Ulman, Judith Enz, Richard Saltford, Harry Norman, Barbara Hartman, Larry Nelson. | Irrelevant; conclusionary; prepared in anticipation of litigation or administrative action; witnesses to be available to be interviewed by ACRD; work product privilege. |
| 5. Handwritten notes, undated, prepared by University Counsel Max Jarrett and Lynne Wood. | Attorney client privilege, work product privilege. |
| 6. Memorandum dated August 27, 1982 from Dr. Felix Goodwin to Dr. William Clauss. | Attorney client privilege; prepared at the direction of Counsel; work product privilege. |
| 7. Memorandum dated September 1, 1982, from Dr. William Clauss to Dr. Felix Goodwin, with 17 exhibits (the letter is not being provided, however all 17 exhibits are being provided to the Division.) Five exhibits have already been provided to the Division as exhibits numbered 13, 14 16, 17, and 18 to the Position Statement. | Irrelevant; attorney client privilege; work product privilege; prepared in anticipation of litigation or administrative action; witness available to be interviewed. |
| 8. Letter dated May 23, 1982, from Richard Saltford to the Affirmative Action Office. | Irrelevant; this concerns a separate complaint and Affirmative Action issues." |

All of these documents were furnished the trial court for in camera examination and we have them in our appellate record. The 8 documents consist of a total of 50 pages. The Division subsequently modified its Application to seek only those documents which the University had thus withheld. To supplement those facts previously set forth are pertinent portions of the stipulated facts submitted to the court as follows:

"1. On May 18, 1982, Dr. John C. Reinbold filed an internal letter of complaint to the Affirmative Action Office at the University of Arizona....

2. On May 25, 1982, Dr. Jean R. Kearns responded to Dr. Reinbold, indicating that his complaint had been received by her office and informing him that Dr. Felix Goodwin would be in charge of investigating Reinbold's complaint concerning affirmative action and fair employment practices....

3. Dr. Goodwin conducted the internal investigation on behalf of the Affirmative Action Office and reported his preliminary findings to Dr. Kearns in memorandum dated June 21, 1982. That document was not released to the Arizona Civil Rights Division in response to its request for the internal Affirmative Action Office file in this matter because it is considered by the University to be privileged as a self-critical analysis, irrelevant and containing conclusions and opinions.

4. Because Dr. Kearns had resigned as Affirmative Action Officer for the University of Arizona effective June 30, 1982, the Affirmative Action Office file was forwarded to Lynne O. Wood, University Attorney, assigned to advise the Affirmative Action Office. Ms. Wood reviewed the investigative file and determined that more investigation was required before a determination could be made concerning Dr. Reinbold's allegations of violations of affirmative action, regulations and unfair employment practices. Ms. Wood met with Dr. Goodwin and directed him to conduct further investigation. Those handwritten notes have been withheld from the Arizona Civil Rights Division and identified as document # 5 in a letter from Ms. Wood to Mr. David Brown of the Arizona Civil Rights division dated April 26, 1983; a copy of which is attached herein as Exhibit C and incorporated by reference herein.

5. On August 2, 1982, Reinbold filed a charge of age and sex discrimination with the Equal Employment Opportunity Commission (EEOC) against the University of Arizona, Continuing Education Division. That charge was received by the University on August 17, 1982. On that

same day, Ms. Wood distributed copies of the charge to the appropriate University and Regents officials, indicating that she would be directing the investigation of this charge and that Dr. Felix Goodwin would be assisting her in preparing the Affirmative Action investigative report and recommendations. Normally, this letter would have been written by the Affirmative Action Officer. However, at that time the Affirmative Action Officer position was unfilled and the acting Affirmative Action Officer was on vacation. The normal University procedure when a charge of discrimination is received from any investigative agency is for the Affirmative Action Officer to send out such a notice at the direction of the University Attorney. The University Attorney's office, specifically Ms. Wood of that office, is responsible for overseeing the investigation, interacting with the investigative agency, preparing any documents which are sent to the investigative agency and accompanying supervisory employees and agents of the University when they are interviewed by the investigative agency. At all times, Ms. Wood acted in her capacity as University Attorney.

6. The EEOC deferred Reinbold's charge to the Arizona Civil Rights Division (ACRD) and it was filed with ACRD on August 19, 1982. That charge was forwarded to the University, and on August 31, 1982 Ms. Wood distributed a similar memo to the appropriate University and Regents officials informing them of the receipt of this charge and that Ms. Wood would be directing the investigation concerning this charge. Because a formal agency charge was received before the University completed the internal Affirmative Action investigation, Ms. Wood determined that rather than making a final report on the internal investigation, she would use the preliminary report by Dr. Goodwin and the additional information gathered at her request to formulate the Position Statement to ACRD.

7. On December 8, 1982, Ms. Wood received a set of Interrogatories which sought information about the allegations in the charge and about the results of the internal investigation conducted by the Affirmative Action Office.

8. On January 14, 1982, Ms. Wood returned to the ACRD an eight page Position Statement containing 21 attachments, a copy of which is attached hereto as Exhibit F-4 and incorporated herein by this reference. On that same day, Ms. Wood returned to the ACRD the Interrogatories received on December 8, substantially answering the questions, with the exception of the question concerning the internal investigation which the University claimed was confidential.

. . . . .

The only issue presented in this appeal is whether the trial court erred in holding that the documents withheld by the University were properly withheld. We find error and reverse.

The trial court did not state the basis for its ruling so we will consider each of the objections to disclosure urged by the University. These are: relevancy, burdensomeness, opinions and conclusions, availability of persons for interview, attorney-client privilege, work product and self critical analysis.

We begin our analysis of these objections by holding that the discoverability of the documents is to be judged by the standards established for agency subpoenas at the investigative stage. These standards have been enunciated by the federal courts in litigation involving enforcement proceedings brought by the Federal Trade Commission and the U.S. Department of Labor. *See United States v. Morton Salt Company,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950) and *Oklahoma Press Publishing Company v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). The particular provision at issue, A.R.S. § 41–1403(B), is substantially identical to the analogous provision in Title VII, 42 U.S.C. § 2000e–9 which specifically incorporates the provisions of the National Labor Relations Act, 29 U.S.C. § 161(1), for purposes of describ-

ing the powers and limitations of the investigating agency. Additionally, this court has previously held that the substantive decisions of federal courts interpreting Title VII are persuasive in construing the Arizona Civil Rights Act. *Civil Rights Division of the Arizona Department of Law v. Vernick Plumbing and Heating Co., Inc.,* 132 Ariz. 84, 643 P.2d 1054 (App. 1982). It is equally appropriate to adopt federal agency standards in determining the criteria a parallel state investigatory agency should apply in exercising its statutory powers to investigate charges, since the Arizona Act is *in pari materia* with Title VII's descriptions of those powers. In *State ex rel. Corbin v. Sorich,* 125 Ariz. 331, 609 P.2d 601 (App.1980), this court previously held that rules, regulations and due process requirements (including the Rules of Evidence) which are necessary in a trial-like setting, are neither proper nor necessarily desirable in an investigatory proceeding.

### Relevancy

■ Material sought to be discovered by an agency subpoena investigating a charge of discrimination is relevant if it relates to or touches the matter under investigation. *Oklahoma Press Publishing Company, supra; Equal Employment Opportunity Commission v. University of New Mexico, Albuquerque, New Mexico,* 504 F.2d 1296 (10th Cir.1974). The documents sought, and withheld, in the instant case are clearly relevant. They are materials gathered during the University's own investigation of Reinbold's complaint. The only exception might be document number 8. However, this letter from Richard Saltford is a complaint of discriminatory conduct of the University in the same department and a perusal of that letter clearly shows that it relates to the matter under investigation.

### Burdensomeness

We need not dwell upon this objection since the documents were readily procured for in camera examination by the trial court and have also been available to this court.

### Opinions and Conclusions

■ The appellee has cited no authority supporting the argument that documents containing opinions and conclusions may not be subpoenaed for that reason alone and we know of none. While this might be a valid objection to a document offered at trial, it is not a reason to withhold production at the investigative stage.

### Availability of Persons for Interview

■ This objection to production of the documents is likewise without authority or merit. The appellant is entitled to discover the memorialized statements of persons interviewed during the University's investigation of the complaint even though the same persons may be available for interview by the agency. In *Equal Employment Opportunity Commission v. University of New Mexico, supra,* citing *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) the court held:

"(T)he rule that the enforcement of administrative subpoenas rests upon a showing that the investigation: (a) will be conducted pursuant to a legitimate purpose; (b) that the inquiry is relevant to the purpose; (c) that the information sought is not already in the possession of the administrative body; and (d) that the administrative steps required by the Code have been followed.

We thus conclude .... that administrative subpoenas may be enforced for investigative purposes unless they are plainly incompetent or irrelevant to any lawful purpose." 504 F.2d at 1303.

The documents withheld by the University clearly meet this standard. We will not impose an additional requirement of the nonavailability of declarants.

### Attorney-Client Privilege

■ We first note that no attorney has been subpoened. The subpoena is of a vice president of the University, not the attorney. A.R.S. § 12–2234 provides that:

"In a civil action an attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment. An attorney's secretary, stenographer or clerk shall not, without the consent of his employer, be examined concerning any fact the knowledge of which was acquired in such capacity."

None of the documents subpoened violate this statutory prohibition. It is claimed, however, that some of the materials were furnished to the University attorney. This does not bring them within the privilege.

"The fact that a client has communicated information to his lawyer does not render that information undiscoverable. Instead, it simply prevents the lawyer from being required to reveal what was said. Except as prevented by some other privilege, the client may be deposed concerning any information he has about the events in issue. And, preexisting documents are not rendered immune to discovery by transmitting them to a lawyer." M. Udall & J. Livermore, *Arizona Law of Evidence*, § 74 at 138 (2nd ed. 1982).

■ Furthermore, nothing in the stipulated facts shows that any of the documents withheld were given the University attorney for the purpose of obtaining legal advice. At best counsel was, after her involvement, directing the conduct of the investigation. Unless the services performed by the attorney are the giving of legal advice based upon confidential information from the client, there is no privilege. *United States v. Davis*, 636 F.2d 1028 (5th Cir.1981), cert. denied 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162. *See also Resnick v. American Dental Association*, 95 F.R.D. 372 (N.D.Ill.E.D.1982). It was the burden of the appellee to prove that an attorney-client privilege existed. *United States v. Kelly*, 569 F.2d 928 (5th Cir.1978), cert. denied, 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123. That burden has not been satisfied.

## Work Product

■ This privilege pertains to documents prepared or obtained because of the prospect of litigation. 8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2028 (1970). Whether this test applies is determined by the nature of the document and the factual setting. The privilege, when applicable prevents an adversary from obtaining documents which contain the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation. Rule 26(b), Rules of Civil Procedure, 16 A.R.S.; *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The Division is not an adversary of the University at this stage as to the charge filed August 2 by Reinbold. It is charged with the duty of investigating the complaint. If it determines there is not reasonable cause, to believe the charge is true, it dismisses it and notifies the parties. If it finds reasonable cause, it makes findings of fact and attempts conciliation of the matter. If this fails it may bring a civil action against the employer. The charging party may also bring such an action if the Division does not, or may intervene in the action brought by the Division. If a civil court action is commenced, the evidence gathered by the Division is subject to discovery. A.R.S. § 41–1481. Thus, although the Division and the University are not in an adversarial position during the investigative stage, they may well become adversaries and we believe documents which are true work product should be protected. We note also that the evidence collected may become available to the charging party and this would violate the work product privilege.

We must determine whether any of the documents are work product. Neither the documents themselves nor the stipulated facts show that they contain the impressions, conclusions, opinions or theories of the University attorney.

■ The work product rule may not be invoked unless these materials were collected in preparation for the civil action

which may be forthcoming. Nothing shows that they were collected for this purpose except one reference in which the author (not University counsel) notes that there are certain allegations the University may have to answer for "State or Federal agencies if this complaint is pursued and it appears that it will." We do not believe that this observation standing alone is sufficient to conclude that the documents were gathered in preparation for litigation. *See United States v. Davis, supra.* The thrust of the stipulated facts shows that upon receiving Reinbold's initial complaint May 18, 1982, the University undertook an investigation. This was its usual practice. The purpose of the investigation, a function of the Affirmative Action office, was to answer Reinbold's complaint. *See Resnick v. American Dental Association, supra.*

### Self-Critical Analysis

■ The appellee's reliance on this privilege is misplaced. The privilege was first recognized in *Bredice v. Doctor's Hospital,* 50 F.R.D. 249 (D.D.C.1970) in connection with internal, self-evaluating investigations of hospitals and medical facilities. It is explained in *Webb v. Westinghouse Electric Corporation,* 81 F.R.D. 431 (E.D.Pa. 1978) as follows:

"The theoretical basis for the defense of 'self critical analysis' stems from the public policy which recognizes that voluntary compliance by employers with federal equal employment opportunity laws is essential for implementation of the policy of equal opportunity in employment. In furtherance of voluntary compliance, employers must be encouraged to be candid and forthright in assessing their employment practices and setting goals and timetables for eradicating policies deemed to be discriminatory in operation or effect. If subjective materials constituting 'self critical analysis' are subject to disclosure during discovery, this disclosure would tend to have a 'chilling effect' on an employer's voluntary compliance with equal employment opportunity laws." 81 F.R.D. at 433.

The court went on to observe that several factors emerge as potential guideposts for the application of the "self-critical analysis defense":

"... First, materials protected have generally been those prepared for mandatory governmental reports. Second, only subjective, evaluative materials have been protected; objective data contained in those same reports in no case have been protected. Finally, courts have been sensitive to the need of the plaintiffs for such materials, and have denied discovery only where the policy favoring exclusion of the materials clearly outweighed plaintiff's need." Id. at 434.

The withheld documents in the instant case were not prepared in order to fulfill any reporting obligation to a governmental body. They were prepared in the process of investigating Reinbold's complaint and for that purpose. The fact that they contain self-critical analysis does not bring them within the doctrine. *Resnick, supra. And see Jolly v. Superior Court of Pinal County,* 112 Ariz. 186, 540 P.2d 658 (1975). Our review of the documents shows they do contain objective data. No facts show that any reasons given for nondisclosure outweigh the Division's need for these materials in their own investigation.

If we were to affirm the trial court's ruling, it might stop much of such an investigation in the public interest at the very threshold of inquiry. This might effectively render substantially impossible, or at least make more difficult, the effective discharge of the duties our legislature has given the Division. *See Oklahoma Press Publishing Company, supra.* Since we find no basis for the trial court's order prohibiting the production of the documents examined in camera, reverse and remand with directions to have the documents produced in obeyance to the subpoena.

HOWARD and HATHAWAY, JJ., concur.