IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**ISRAEL JOSEPH NARANJO,**
*Petitioner*

*v.*

**THE HONORABLE HOWARD SUKENIC, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,**
*Respondent Judge,*

**STATE OF ARIZONA, EX REL., KRISTIN K. MAYES, ATTORNEY GENERAL,**
*Real Party in Interest.*

No.   CR-22-0076-PR
**Filed February 28, 2023**

Appeal from the Superior Court in Maricopa County
The Honorable Howard Sukenic
No. CR2007-119504-001
**AFFIRMED AND REMANDED**

Order of the Court of Appeals, Division One
No. 1 CA-SA 22-0017
Filed February 22, 2022

COUNSEL:

Stephen Whelihan (argued), Adrian Little, Office of the Legal Advocate, Phoenix, Attorneys for Israel Joseph Naranjo

Kristin K. Mayes, Arizona Attorney General, Jeffrey Sparks, Deputy Solicitor General/Section Chief of Capital Litigation, Sarah E. Heckathorne (argued), Assistant Attorney General, Capital Litigation Section, Gregory Hazard, Senior Litigation Counsel, Capital Litigation Section, Phoenix, Attorneys for State of Arizona

David J. Euchner, Pima County Public Defender's Office, Tucson; Emily Skinner, Arizona Capital Representation Project, Phoenix, Attorneys for Amici Curiae Arizona Attorneys for Criminal Justice and Arizona Capital Representation Project

---

JUSTICE KING authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK and BEENE joined.[*]

---

JUSTICE KING, Opinion of the Court:

¶1        In a post-conviction relief ("PCR") proceeding, the superior court determined that Israel Joseph Naranjo raised a colorable claim for ineffective assistance of trial counsel.   We must now determine whether the PCR court erred in ordering Naranjo to disclose materials associated with trial counsel's interviews of three of Naranjo's family members who did not testify during the penalty phase of trial.   We conclude the PCR court did not err in ordering the disclosure of such records.

## I.        BACKGROUND

### A.  Naranjo's Petition for Post-Conviction Relief

¶2        "A jury found [Naranjo] guilty of two counts of first degree murder and sentenced him to death."  *State v. Naranjo*, 234 Ariz. 233, 238 ¶ 1 (2014).   This Court affirmed Naranjo's convictions and sentences on direct appeal.   *Id.* at 250 ¶ 90.   Subsequently, Naranjo filed a petition for post-conviction relief ("PCR petition") alleging multiple grounds for relief. One of Naranjo's PCR claims is that he "received ineffective assistance of

---

[*] Justice John R. Lopez IV and Justice William G. Montgomery have recused themselves from this case.

counsel in the penalty phase" ("Claim III").   His PCR petition introduces Claim III as follows:

> Trial counsel's deficient performance in the penalty phase consisted of numerous errors and omissions, beginning with the failure to adequately investigate mitigating factors. Without an adequate investigation of [intellectual disability], counsel made it the focus of the penalty phase, making their case for it determinative of the question of life or death, instead of presenting a case for life based on multiple factors. Then, the execution of the chosen strategy was riddled with error throughout.

The PCR petition further breaks down Claim III into five subparts that are relevant here, which contain the following allegations, among others:

**¶3**       Claim III(A): Naranjo asserts his trial counsel's "performance was deficient in the investigation and presentation of the case for [intellectual disability]," citing *Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (holding Eighth Amendment prohibited execution of intellectually disabled criminal) and A.R.S. § 13-753(K)(3) (defining "intellectual disability").

**¶4**       Claim III(B): Naranjo alleges trial counsel's "performance was deficient in its reliance on Dr. Thompson's testing to prove significantly subaverage intellectual functioning."   Without this and "other deficiencies in the investigation and presentation of evidence of [intellectual disability], there is a reasonable likelihood the outcome of the penalty phase would have been different.   The likelihood of a finding of [intellectual disability] is demonstrated by the report of Dr. Reschly."

**¶5**       Claim III(C): Naranjo argues trial counsel's "performance was deficient by failing to prepare Dr. Switzky to address the IQ scores of Dr. Babich and Dr. Bayless, and to provide notice of the intent to do so."

**¶6**       Claim III(D): Naranjo alleges trial counsel's "deficient performance in the preparation of the testimony of Dr. Switzky was manifested in several other ways," and this "damaged the credibility of the defense."   Naranjo claims, for example, there was a "lack of preparation with the pertinent records" and "Dr. Switzky was under the impression

that Naranjo started school when he was 5 years old, but the records showed that he was 3, going on 4."

¶7        Claim III(E): Naranjo argues trial counsel's "performance was deficient in preparing for the testimony of Dr. Babich about low intellectual functioning."

¶8        The PCR court determined Naranjo's ineffective assistance of counsel claim in III(A)–III(E) of the PCR petition is "colorable and an evidentiary hearing is necessary." *See State v. Runningeagle*, 176 Ariz. 59, 63 (1993) ("The defendant is entitled to an evidentiary hearing only when he presents a colorable claim—one that, if the allegations are true, might have changed the outcome."). The PCR court ordered a hearing on the "alleged multiple errors during the investigation, preparation, and presentation of defendant's alleged intellectual disability, both pre-trial and in the penalty phase."

¶9        In the same order, the PCR court also determined that two claims in Naranjo's PCR petition are "inextricably intertwined with the one (1) claim . . . found colorable." The first "inextricably intertwined" claim is "whether defendant has or can establish by clear and convincing evidence that he is intellectually disabled." On this claim, Naranjo's PCR petition alleges in part: "There is clear and convincing evidence Naranjo has Intellectual Disability, sufficient to establish that the death penalty would not have been imposed" (Claim XI). Naranjo claims such evidence includes his "full-scale IQ score," his "adaptive behavior deficits by witnesses," and "the prevalence of low intellectual functioning among members of Naranjo's relatives."

¶10        The second "inextricably intertwined" claim is "whether Defendant's trial counsel provided ineffective assistance of counsel in the investigation, development, and presentation of mitigation evidence." On this claim, Naranjo's PCR petition alleges in part that counsel was deficient in (1) "preparing, presenting, and explaining the testimony of Dr. Babich about other mitigating circumstances" (Claim III(F)); (2) "failing to present the favorable testimony of Dr. Bayless" (Claim III(I)); and (3) "failing to investigate, present, and explain evidence of mitigating circumstances" (Claim III(M)).

¶11	The PCR court ordered an evidentiary hearing on the colorable claim and noted that its ruling on the merits of the two "inextricably intertwined" claims would be taken "under advisement pending the conclusion of the evidentiary hearing." The PCR court dismissed all other claims in Naranjo's PCR petition.

## B. The State's Motion to Compel Disclosure of Trial Materials

¶12	Before the evidentiary hearing, the State filed a motion to compel disclosure of "the complete, unredacted trial files of . . . trial counsel, trial mitigation specialists, and trial investigators; any unredacted statements from Naranjo's disclosed evidentiary hearing witnesses; and all materials his post-conviction expert witnesses relied upon when preparing their reports or testimony for post-conviction proceedings." The State sought "all billing records, outlines, notes, research, and witness statements" that "show what counsel knew and investigated when [counsel] pursued their trial strategy in the guilt, aggravation and penalty phases of the trial." The State also requested disclosure of statements regarding Naranjo's lay witnesses, arguing he "waived the attorney-client privilege . . . when he filed his [PCR petition] alleging he received ineffective assistance of counsel." The State claimed the requested information was related to the issue of whether trial counsel's performance was deficient or constituted a reasonable strategy under *Strickland v. Washington*, 466 U.S. 668 (1984).

¶13	In ruling on the motion to compel, the PCR court noted it "holds inherent authority" to order the disclosure of records in post-conviction proceedings "for good cause shown." The PCR court ordered that

> [Naranjo's] trial file is discoverable to the State but only as it pertains to defendant's claim of ineffective assistance of counsel as to the issues previously identified by the Court. That being, whether defense trial counsels' performance was deficient and prejudicial in the investigation, preparation and presentation of defendant's alleged intellectual disability, both pre-trial and in the penalty phase. In addition as the Court took under advisement whether defendant has or can establish by clear and convincing evidence that he is intellectually disabled, as well as whether trial counsel provided ineffective assistance of counsel in the investigation,

5

development and presentation of mitigation evidence, that portion of defendant's file is discoverable as well. This also extends to all other material relied upon by defendant's experts.

The order also explained, "[a]s an intermediate step, defendant must disclose all material provided to or utilized by defendant's expert(s)." Further, if Naranjo claims privilege over certain items, he must note those items in a privilege log that is produced to the State.

¶14      Through the disclosure of billing records, the State became aware that trial counsel interviewed—but did not call as witnesses—three of Naranjo's family members.   The State sought disclosure of trial counsel's records regarding these three family-member interviews. Naranjo objected, claiming the materials are not relevant and should remain confidential.   At a hearing, the PCR court ordered Naranjo to disclose "any documents related to these three particular witnesses," but allowed Naranjo to redact information "particularly harmful to the defendant or embarrassing" and explain such redactions in a privilege log.[1] In a subsequent written order, the PCR court ordered the disclosure of "all notes, Emails and any related documents associated with the three [family-member] interviews" and "Defense Counsel may make redactions with clear explanations for those redactions."

¶15      Naranjo filed a motion for reconsideration.   The PCR court denied the motion, explaining the information will assist in showing what trial counsel "knew, the reasonableness of their strategy, and whether their performance was constitutionally deficient and whether Defendant suffered prejudice as a result of the employed strategy."   The PCR court determined the information from these family-member interviews is "either admissible or may lead to admissible, relevant testimony" and "the State must have at its disposal all information the trial defense team knew and all actions performed in an effort to provide a full and fair picture for this Court to make a ruling."   The PCR court indicated Naranjo was trying

---

[1] The State had interviewed trial counsel who claimed no independent recollection of most questions discussed during the three family-member interviews.

to overly restrict the scope of discovery and that he had waived the privilege by filing his PCR petition.

**¶16**       Naranjo filed a petition for special action in the court of appeals, but the court declined to accept jurisdiction.   We granted review because the proper scope of disclosure of trial counsel's materials when a defendant has raised a claim of ineffective assistance of counsel is a recurring issue of statewide importance.   We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## II.       DISCUSSION

**¶17**       "In discovery matters, . . . the trial judge has broad discretion that we review only for abuse."   *State Farm Mut. Auto. Ins. v. Lee*, 199 Ariz. 52, 57 ¶ 12 (2000).   When "a judge commits an 'error of law . . . in the process of reaching [a] discretionary conclusion,' he may be regarded as having abused his discretion."   *Twin City Fire Ins. v. Burke*, 204 Ariz. 251, 254 ¶ 10 (2003) (alteration in original) (quoting *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456 (1982)).   We apply de novo review to the interpretation of the Arizona Rules of Criminal Procedure, *State v. Gutierrez*, 229 Ariz. 573, 576 ¶ 19 (2012), and whether a party has waived a privilege, *Twin City Fire Ins.*, 204 Ariz. at 254 ¶ 10.

### A.   "Good Cause" for Discovery under Rule 32.6(b)(2)

**¶18**       In *Canion v. Cole*, 210 Ariz. 598, 600 ¶ 10 (2005), we stated PCR courts have "inherent authority to grant discovery requests in PCR proceedings upon a showing of good cause."   Later, we promulgated Arizona Rule of Criminal Procedure 32.6(b)(2) (effective Jan. 1, 2020) to codify *Canion*'s holding.   The rule also elaborates on the requisite showing of "good cause" for discovery after a PCR petition is filed:

> *After Filing a Petition*. After the filing of a petition, the court may allow discovery for good cause. To show good cause, the moving party must identify the claim to which the discovery relates and reasonable grounds to believe that the request, if granted, would lead to the discovery of evidence material to the claim.

**¶19**      Emphasizing the interests of confidentiality in capital cases, Naranjo requests that this Court require the State to demonstrate a "substantial need" for information before a court may order disclosure in a capital case, citing the "substantial need" standard in Rule 15.1(g).   But the relevant rule here (Rule 32.6(b)(2)) allows discovery "[a]fter the filing of a petition" with a showing of "good cause."   Tellingly, Rule 32.6(b)(1)— which allows discovery "[a]fter the filing of a notice *but before* the filing of a petition"—contains a "substantial need" standard.   (Emphasis added.) Also, the "substantial need" language in Rule 15.1(g) applies to the "State's Disclosures" in "Pretrial Procedures," which are not at issue here. Therefore, we decline to adopt a "substantial need" standard for discovery requests after a PCR petition is filed and instead apply the "good cause" requirement enunciated in Rule 32.6(b)(2).

**¶20**      We must now decide whether the PCR court correctly determined there was good cause for the disclosure of materials associated with trial counsel's interviews of the three family members.[2]

**¶21**      To establish an ineffective assistance of counsel claim under *Strickland*, a defendant must first "show that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."   466 U.S. at 687; *see also id.* at 690 (requiring a defendant to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment").   Second, the defendant must "show that the deficient performance prejudiced the defense."   *Id.* at 687.

**¶22**      Naranjo claims he should not have to disclose the three family-member interview materials because he did not allege trial counsel engaged

---

[2] Here, the PCR court did not rely on Rule 32.6(b)(2), but instead relied on the court's "inherent authority" under *Canion*, 210 Ariz. at 600 ¶ 10, finding "good cause" to order discovery to the same effect.   Thus, although the court should have proceeded under Rule 32.6(b)(2), the analytical approach is the same.

in "acts or omissions" with respect to the three family members or failed to adequately interview them. But the "good cause" standard in Rule 32.6(b)(2) is not so narrow. Rule 32.6(b)(2) permits discovery where there are "reasonable grounds to believe that the request, if granted, would lead to the discovery of evidence material to the claim."

¶23 Further, we reject Naranjo's contention that "evidence material to the claim" in Rule 32.6(b)(2) means something more than relevant, or of especially high probative value. Under Arizona Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." "Materiality is captured in Rule 401" — in subsection (b) — "by requiring, in order to [show] relevance, that the fact sought to be proved be 'of consequence to the determination of the action.'" *See* Shirley J. McAuliffe, *Arizona Practice Law of Evidence* § 401:2 (4th ed. 2022); *see also Evidence*, Black's Law Dictionary (11th ed. 2019) (defining "material evidence" as "[e]vidence having some logical connection with the facts of the case or the legal issues presented"). Accordingly, "materiality" is not a stricter principle than relevancy, nor does it mean something of especially high probative value.

¶24 In our application of Rule 32.6(b)(2), we observe that one of Naranjo's "inextricably intertwined" claims alleges: "Competent counsel would have been guided . . . by the ABA Guidelines" which state "[i]t is necessary to locate and interview the client's family members" and a "multi-generational investigation frequently discloses significant patterns of family dysfunction," but "[c]ounsel evidently was not guided by these provisions in this case." Further, the "standard of practice for mitigation investigation is contained in a declaration of Mary Duran[d]" but "[t]he investigation of mitigation in this case fell far below the standard." Durand's declaration states "the mitigation investigator conducting the social history must complete in-depth interviews with . . . as many individuals as can be located who have known the defendant throughout his life." It further states those interviews should include immediate and extended biological family members.

¶25 Under Rule 32.6(b)(2), we conclude there are reasonable grounds to believe that materials associated with the three family-member interviews would reveal information about Naranjo's background and

whether, based on their statements, trial counsel took additional investigative steps that were "the result of reasonable professional judgment." *See Strickland*, 466 U.S. at 690. Such information is discoverable to determine, for example: What did trial counsel ask the three family members and was it the type of information identified in Durand's declaration? Did the information provided in those three interviews lead trial counsel to make a reasonable decision to discontinue developing or investigating certain types of mitigation evidence because such evidence conflicted with Naranjo's position in the case? *See id.* at 691 (stating, in the context of investigations, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"). Did the information provided lead trial counsel to make a reasonable decision to cease the investigation into one area and focus on another area instead? *Id.* Thus, there are reasonable grounds to believe that materials associated with the three family-member interviews would lead to the discovery of evidence material to whether trial counsel was ineffective in the development of mitigation evidence. *See* Rule 32.6(b)(2).

**¶26** In addition, we observe that Naranjo's "inextricably intertwined" claim alleges:

- Naranjo "was raised in a family and neighborhood where gangs were prevalent" and presenting this information would have limited the aggravating impact of the prosecution's emphasis on anti-social personality disorder.

- His "fatherless upbringing may have been a factor in [certain] aspects of his personality. This would have helped establish a nexus between Naranjo's disadvantaged background and the murder."

- "Dr. Bayless had testimony to offer about mitigating factors including Naranjo's . . . cognitive and behavioral impairments" that stem from his "substance abuse," and the "failure to discover and present the information was deficient performance."

- "Counsel's performance was also deficient for failing to investigate the effect of sexual abuse on [Naranjo's] development."

10

- An adequate investigation would have revealed "a disadvantaged background in a family and a community where poverty, physical abuse, substance abuse, domestic violence, sexual abuse, gang activity and criminal conduct were the norm" and "that Naranjo's childhood was marked by early exposure to alcohol and illegal drugs, neglect, physical abuse, sexual abuse, and criminal activity." These circumstances "contributed to Naranjo's mental and emotional dysfunctional development, which led directly to Naranjo killing" the victim. Presenting such evidence likely "would have led to a different outcome, based on diminished moral culpability."

- Counsel failed to elicit testimony that could have connected "Naranjo's crimes and his disadvantaged background, emotional problems, and mental illness."

There are reasonable grounds to believe the interviews of Naranjo's three family members would lead to the discovery of evidence material to these allegations about his background, childhood, and upbringing. *See* Rule 32.6(b)(2).

¶27 Further, Naranjo's claim of intellectual disability is at the heart of his claim and the "inextricably intertwined" issues. There are reasonable grounds to believe the interviews of Naranjo's three family members would lead to the discovery of evidence material to Naranjo's claim of intellectual disability, *see* Rule 32.6(b)(2) — specifically with respect to the "adaptive behavior" element of "intellectual disability." *See* § 13-753(K)(3) (defining "[i]ntellectual disability" as "a condition based on a mental deficit that involves significantly subaverage general intellectual functioning, existing concurrently with significant impairment in adaptive behavior, where the onset of the foregoing conditions occurred before the defendant reached the age of eighteen"); *see also* § 13-753(K)(1) (defining "[a]daptive behavior" as "the effectiveness or degree to which the defendant meets the standards of personal independence and social responsibility expected of the defendant's age and cultural group"). Accordingly, we conclude there is good cause for the disclosure of materials associated with the three family-member interviews under Rule 32.6(b)(2).

## B. Ineffective Assistance of Counsel and Waiver of Privilege

**¶28** We now address the issue of privilege in the context of Naranjo's claims. When a defendant raises an ineffective assistance of counsel claim, "[i]t is not only the integrity of the attorney which is at stake but that of the entire fact-finding process," and "the court must have before it all relevant facts relating to the claim." *State v. Moreno*, 128 Ariz. 257, 260 (1981); *see also State v. Cuffle*, 171 Ariz. 49, 52 (1992) (holding the trial court must have all relevant facts relating to a claim questioning the competency of an attorney).

**¶29** We have held "[t]he claim of ineffective assistance of counsel is a direct attack on the competence of an attorney and constitutes a waiver of the attorney-client privilege." *Moreno*, 128 Ariz. at 260; *see also* A.R.S. § 13-4062(2) (establishing attorney-client privilege "as to any communication made by the client to the attorney, or the attorney's advice given in the course of professional employment"). To that end, Rule 32.6(f) states that a defendant who raises a claim of ineffective assistance of counsel "waives the attorney-client privilege as to any information necessary to allow the State to rebut the claim, as provided by Ariz. R. Sup. Ct. 42, Ethical Rule ("ER") 1.6(d)(4)." [3] Likewise, our precedent provides that a party who asserts an ineffective assistance of counsel claim has waived the attorney-client privilege as "to the particular contentions asserted." *Cuffle*, 171 Ariz. at 51–52 (holding "an attorney should be allowed to defend himself, at least with regard to the particular contentions asserted, by revealing 'at least that much of what was previously privileged as is necessary'" (quoting *Moreno*, 128 Ariz. at 260)); *State v. Zuck*, 134 Ariz. 509, 515–16 (1982) (stating an "attack on counsel's competency[] has waived the attorney-client privilege as to the contentions asserted"); *see also State v. Lawonn*, 113 Ariz. 113, 114 (1976) ("By raising on appeal the issue of lack of knowledge of a right waived by a guilty plea, we

---

[3] ER 1.6(a) provides that "[a] lawyer shall not reveal information relating to the representation of a client," but one exception is in ER 1.6(d)(4): "A lawyer may reveal such information relating to the representation of a client to the extent the lawyer reasonably believes necessary . . . to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client . . . or to respond to allegations in any proceeding concerning the lawyer's representation of the client."

hold that defendant has waived the attorney-client privilege as to this issue."). Accordingly, by asserting an ineffective assistance of counsel claim, Naranjo has "waive[d] the attorney-client privilege as to any information necessary to allow the State to rebut the claim." *See* Rule 32.6(f).

¶30 To the extent the documents at issue contain attorney work product, we note the parties did not address whether Naranjo may assert the work-product privilege or whether that privilege is instead held by trial counsel. The parties also did not address whether trial counsel waived the work-product privilege by disclosing documents to Naranjo and his new counsel. *See Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 142 ¶ 39 (App. 2003) ("[T]he work-product privilege is designed to protect mental impressions and theories of attorneys or other client representatives concerning actual or prospective litigation involving the client." (citing *State ex rel. Corbin v. Weaver*, 140 Ariz. 123, 129 (App. 1984))). Thus, we do not resolve these issues. But even if Naranjo could assert the attorney work-product privilege, he has waived the privilege to the same extent he has waived the attorney-client privilege. *See supra* ¶ 29; *Bittaker v. Woodford,* 331 F.3d 715, 722 n.6 (9th Cir. 2003) (addressing habeas petitioner's waiver of attorney-client privilege by raising ineffective assistance of counsel claim and noting court's decision "applies equally to the work product privilege").

## C. Other Issues Related to the Disclosure of Materials

¶31 In ordering the disclosure of the three family-member interview materials, the PCR court permitted defense counsel to redact certain information and provide the State a log describing the basis for such redactions.[4] We now provide guidance about appropriate redactions in this context.

---

[4] The PCR court permitted defendant to redact information that was "particularly harmful to the defendant or embarrassing." However, Naranjo may not redact non-privileged information that falls within the scope of discovery under Rule 32.6(b)(2) merely on the basis that it is "harmful" or "embarrassing." *See* Rule 32.6(b), (f). If Naranjo believes

**¶32** Naranjo acknowledges "the statements of the three witnesses are not covered by attorney-client privilege." But to the extent materials to be disclosed contain privileged information for which the privilege has *not* been waived, Naranjo may redact such privileged information in his disclosures to the State. In that case, Naranjo must then produce a log that establishes the privilege for the redacted information. *See State ex rel. Adel v. Adleman*, 252 Ariz. 356, 360–61 ¶¶ 13–14 (2022).

**¶33** In addition, to the extent materials containing information within the scope of Rule 32.6(b)(2) also contain *other* information outside the scope of Rule 32.6(b)(2), Naranjo may redact the information that does not meet the Rule 32.6(b)(2) standard. Specifically, he may redact information for which there are no reasonable grounds to believe the information would lead to the discovery of evidence material to his colorable and inextricably intertwined PCR claims. *See* Rule 32.6(b)(2). Such redactions would also require a log that establishes the basis for such redactions.

**¶34** In the event of any redactions, Naranjo's log will allow the State to determine whether to pursue an in camera review of any redacted materials. If this occurs, the PCR court should follow the process set forth in *Adleman*, 252 Ariz. at 360–61 ¶¶ 11–15, and expand it to include redactions made under Rule 32.6(b)(2). "In a dispute over the existence or scope of [a] privilege, the party claiming the privilege must make a prima facie showing that it applies to each contested" item. *Adleman*, 252 Ariz. at 360 ¶ 13 (citing *Clements v. Bernini ex rel. Pima*, 249 Ariz. 434, 439–40 ¶ 8 (2020)). "Upon a prima facie showing of privilege, the party contesting the privilege must demonstrate a good faith basis that an in camera review . . . would reveal waiver of the privilege or establish an applicable exception." *Id.* at 361 ¶ 15 (citing *Clements,* 249 Ariz. at 438 ¶ 1); *see also United States v. Zolin*, 491 U.S. 554, 572 (1989) ("Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, 'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person,' that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." (internal citation omitted)).

---

any such information is "harmful" or "embarrassing," he may request the trial court consider other measures (e.g., specific protective order terms).

¶35      Naranjo has emphasized the interest in confidentiality "in the context of the investigation of the case for mitigation in a capital murder trial," including to "promot[e] frank disclosure by a defendant to his counsel" and "enabl[e] [a] thorough investigation of mitigation" that is fully documented.  We conclude the obligations on a party seeking discovery, in combination with the various protective mechanisms in place here, will sufficiently address those concerns.  First, a party seeking discovery after a PCR petition is filed must demonstrate "good cause" under Rule 32.6(b)(2) before a court orders disclosure.  Second, the defendant may redact information in the materials that is either privileged or falls outside the scope of Rule 32.6(b)(2).  *See supra* ¶¶ 32–33.  Third, there is a process for the court to conduct an in camera review of any disputed redactions.  *See supra* ¶ 34.  Fourth, the PCR court here entered a protective order that "prohibit[s] the State from using, in any retrial or resentencing proceeding, any confidential or privileged information disclosed by Defendant to the State pursuant to any Court Order in post-conviction proceedings."  This order also "prohibit[s] the Office of the Attorney General from sharing any such information with any other agency of the State including any State law enforcement Agency."  These combined measures properly guard against the disclosure of information that is privileged or falls outside the scope of discovery under Rule 32.6(b)(2) and sufficiently address confidentiality in the context of capital case investigations.

¶36      Amici argue a protective order is insufficient to protect the confidentiality of the defense investigation, citing *Lambright v. Ryan*, 698 F.3d 808 (9th Cir. 2012).  But the procedural process in *Lambright* did not include other protective measures that are in place here, including permissible redactions, a log that establishes the basis for such redactions, and a process for conducting in camera review of disputed redactions.  *See id*.  Also, *Lambright* did not hold that a protective order is insufficient in all instances.  *Id.*

¶37      Finally, Naranjo argues the State failed to show the materiality of the documents in question during a hearing pursuant to *Waitkus v. Mauet*, 157 Ariz. 339 (App. 1988).  In *Waitkus,* the court of appeals vacated an order requiring the production of trial counsel's file to the prosecution for inspection and copying.  *Id.* at 340–41.  The court explained, "[t]he trial court may set an evidentiary hearing for the purpose of taking testimony

15

from trial counsel about the specific contentions raised by petitioner."    *Id*. Then, "documents specifically relating to the ineffectiveness claim which are the subject of testimony at the hearing could be produced, and the trial court can insure that irrelevant and still privileged material is protected." *Id.* at 341.

¶38      *Waitkus*, however, arose in the context of a motion for new trial before sentencing under Arizona Rule of Criminal Procedure 24.1 ("Motion for New Trial").    *Id.* at 339–40.    This is vastly different from the proceeding before us—where the sentence was imposed and the appeal completed, and the PCR proceeding occurs years after the underlying trial. Rule 32.6(b)(2), which became effective after *Waitkus*, does not mandate a *Waitkus* hearing before discovery is ordered.    While a PCR court may conduct such a hearing if necessary to determine whether "good cause" exists to grant a discovery request, such a hearing is not required.    Thus, the trial court did not err in failing to order a *Waitkus* hearing.

### III.    CONCLUSION

¶39      We affirm the trial court's order requiring Naranjo to disclose materials associated with trial counsel's interviews of Naranjo's three family members consistent with the procedures set forth in this opinion. We remand to the trial court for further proceedings consistent with this opinion.    We also vacate the stay of proceedings previously entered by this Court.