No. 13027

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

MONTANA DEACONESS HOSPITAL, a Non-Profit Corporation,

Plaintiff and Respondent,

-vs-

GEORGE B. GRATTON,

Defendant and Counterclaimant and Appellant,

GERTRUDE GRATTON,

Plaintiff and Counterclaimant and Appellant,

JUDITH GRAHAM, M.D., and J.C. WOLGAMOT, M.D.,

Additonal Defendants on Counterclaim and Respondent.

---

Appeal from: District Court of the Eighth Judicial District,
Honorable Truman G. Bradford, Judge presiding.

Counsel of Record:

For Appellants:

McKittrick and Duffy, Great Falls, Montana
Joseph W. Duffy argued and Patrick McKittrick,
appeared, Great Falls, Montana

For Respondents:

Jardine, Stephenson, Blewett and Weaver, Great
Falls, Montana
John D. Stephenson, Jr. argued, Great Falls,
Montana
Smith, Emmons and Baillie, Great Falls, Montana
William L. Baillie argued, Great Falls, Montana
Church, Harris, Johnson and Williams, Great Falls,
Montana

---

Submitted: December 10, 1975

Decided: JAN 22 1976

Filed: JAN 22 1976

Thomas J. Kearney

Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

A patient and his wife appeal from a summary judgment against them in their medical malpractice claim against two doctors and a hospital. The summary judgment was entered in the district court of Cascade County by Hon. Truman G. Bradford, district judge.

Appellants are George B. Gratton, the patient, and Gertrude Gratton, his wife. Respondents are two Great Falls doctors, Judith Graham, M.D. and J. C. Wolgamot, M.D., and the Montana Deaconess Hospital, a nonprofit corporation.

On June 14, 1970, Gratton fell and fractured his right shoulder. He was hospitalized at the Montana Deaconess Hospital in Great Falls from June 14 to June 30 during which time Dr. Wolgamot, an orthopedic surgeon, performed an open reduction of the fracture. During this hospitalization Dr. Graham also treated Gratton for a pre-existing seizure disorder. At the time Gratton was discharged from the hospital on June 30 his surgical wound appeared to be healed.

During the next two months, Gratton was seen periodically by both Dr. Graham and Dr. Wolgamot. Gratton was rehospitalized on September 10 following the breaking and draining of what appeared to be a boil in the area of the surgical incision. Cultures taken from the drainage revealed a staph infection and later showed the presence of a pseudomonas organism.

Gratton remained hospitalized until October 16 during which time he was treated by Dr. Wolgamot and was also seen from time to time by Dr. Graham.

Following his discharge from the hospital the second time, Gratton's infection persisted. Gratton was hospitalized a third time from November 18 to November 24. Later Gratton was treated at the Mayo Clinic in Rochester, Minnesota, but he claims his

right arm is still disabled.

In June, 1971, the hospital sued Gratton for the balance of $546.40 allegedly owing from Gratton's third hospitalization. Gratton answered claiming the hospital overcharged for its facilities and services and that the sole reason for his second and third periods of hospitalization was the infection caused by the hospital's negligence during his first hospitalization. Gratton also counterclaimed for damages against the hospital and doctors based on medical malpractice in an amount exceeding $100,000.

Gertrude Gratton alleges a claim against the doctors and the hospital based on medical malpractice in an amount in excess of $75,000.

Extensive discovery was undertaken by all parties consisting of depositions, interrogatories and answers, requests for admissions, and production of medical records for inspection and copying for a period of approximately 3-1/2 years. On March 5, 1975, the district court granted summary judgment to the two doctors and the hospital on appellant's claim of medical malpractice, leaving the hospital's original action for collection of the balance of the hospital bill undisturbed. The Grattons appeal from this summary judgment.

The issue on appeal is whether this summary judgment is correct.

Summary judgment is proper:

" * * * if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *" Rule 56(c), M.R.Civ.P.

Here a review of the record before the district court discloses no genuine issue of <u>material</u> fact. The Grattons have pointed out numerous factual issues principally relating to the

time of the infection, its source, the diagnosis of Gratton's condition, and the treatment given him. If all these questions were ultimately resolved in favor of the Grattons, they still could not prevail. Hence, they are not material facts in the context of the case before us. What is missing here is evidence of any standard of care against which the acts or omissions of the doctors or the hospital staff can be measured to establish negligence on the part of either.

When the record discloses no genuine issue of material fact, the party opposing summary judgment has the burden of presenting evidence of a material and substantial nature raising a genuine issue of material fact. Rickard v. Paradis, ____Mont. ____, 539 P.2d 718, 32 St.Rep. 834; Roope v. The Anaconda Co., 159 Mont. 28, 494 P.2d 922. The Grattons have failed to carry this burden and have not met their initial evidentiary obligations.

In Evans v. Bernhard, 23 Ariz.App. 413, 533 P.2d 721, the court granted summary judgment in favor of a general practitioner on the basis of absence of any proof of a standard of medical care, observing that in a malpractice case the plaintiff's threshhold obligation involves two evidentiary steps:

> "First, evidence must be presented to establish the applicable standard of medical practice in the particular type of case involved and second, it must also be shown that the doctor negligently departed from this recognized standard in his treatment of the plaintiff. In order to make this threshhold breach of duty actionable, it must then be shown that the breach of duty was the legal cause of the plaintiff's injuries. Stallcup v. Coscarart, 79 Ariz. 42, 46, 282 P.2d 791, 793 (1955). The medical standard of care must be established by expert medical testimony unless the conduct complained of is readily ascertainable by a layman. Kalar v. MacCollum, 17 Ariz.App. 176, 496 P.2d 602 (1972). However, third party expert testimony is not always necessary as this standard can be established by the defendant doctor's own testimony. Virgil v. Herman, 102 Ariz. 31, 424 P.2d 159 (1967)."

The cause of an infection is not readily ascertainable by a layman

- 4 -

and the Grattons have not presented expert medical proof establishing the required standard of medical care. The testimony elicited from Drs. Wolgamot and Graham as to their treatment of Gratton as well as their past experience with infections has not established a standard of medical care or a deviation therefrom. A defendant doctor's testimony as to his usual personal practice is not sufficient to establish a general medical standard of care. Also, the personal and individual method of practice of the defendant doctor is not sufficient to establish a basis for an inference that he has negligently departed from the general medical custom and practice of his community. Bernhard, supra. Also, see Collins v. Itoh, 160 Mont. 461, 469, 503 P.2d 36; Karrigan v. Nazareth Convent & Academy, Inc., 212 Kan. 44, 50, 510 P.2d 190; Downer v. Veilleux, (Me. 1974), 322 A.2d 82, 88; Davis v. Virginian R. Co., 361 U.S. 354, 80 S.Ct. 387, 4 L ed 2d 366.

As the Grattons have failed to present any evidence that would establish the applicable standard of medical care; that such a standard was departed from; and that a breach of duty was the proximate cause of Gratton's injury; the hospital and doctors are entitled to summary judgment as a matter of law.

The Grattons seek to establish a presumption of negligence through application of the doctrine of res ipsa loquitur. This doctrine is inapplicable in the ordinary malpractice action. See Negaard v. Feda, 152 Mont. 47, 446 P.2d 436; Vonault v. O'Rourke, 97 Mont. 92, 33 P.2d 535.

The elements necessary for the application of res ipsa loquitur are as follows: (1) The instrumentality which caused the injury must be within the exclusive control of the defendant; (2) the injury must be one that does not ordinarily occur if the party in control uses proper care; (3) the injury must not be

- 5 -

due to any fault on the part of the injured person.  Jackson v. William Dingwall Co., 145 Mont. 127, 399 P.2d 236; Krohmer v. Dahl, 145 Mont. 491, 402 P.2d 979; Stocking v. Johnson Flying Service, 143 Mont. 61, 387 P.2d 312; Prosser, Law of Torts, 4th ed., p. 214.

In the instant case there is no evidence to establish that the instrumentality causing the infection was within the exclusive control of the defendants. Drs. Wolgamot and Graham testified that the infection could have originated from any number of different sources, e.g. blood borne infection, direct contamination from the patient's skin, or as a result of a traumatic injury.  Therefore, the instrumentality causing the infection was not necessarily within the exclusive control of the hospital and doctors.  In Chase v. Haber, 221 C.A.2d 569, 34 Cal.Rptr. 605, it was held that severely infected abscesses appearing at the site of injections for the treatment of pneumonia were not caused by an agency or instrumentality within the exclusive control of the defendant as the abscesses could easily have originated from another source.

A bad result alone does not constitute evidence or raise a presumption or inference of negligence.  The doctrine of res ipsa loquitur is not applicable in a malpractice action from the mere fact that an infection developed in the area of treatment. 162 A.L.R. 1265, 1284, 82 ALR2d 1262, 1298.

The presence of an infection following an operation or open reduction of a fracture does not establish negligence.  Harman v. Rust, 420 S.W.2d 563, (Ky. 1967);  Pfeifer v. Konat, 181 Neb. 30, 146 N.W.2d 743; Starnes v. Taylor, 272 N.C. 386, 158 S.E.2d 339; Smith v. Curran, 28 Colo.App. 358, 472 P.2d 769; Steinmetz v. Humphrey, 289 Ky. 709, 160 S.W.2d 6; Haliburton v. General Hosp. Soc. of Connecticut, 133 Conn. 61, 48 A.2d 261, 20 N.C.C.A., N.S. 505; Lorenz v. Booth, 84 Wash. 550, 147 P. 31.

Gertrude Gratton additionally asserts that she is entitled to summary judgment against Drs. Wolgamot and Graham as a matter of law based on an admission of negligence contained in their answer. We do not so construe the pleadings. We have examined the counterclaim and answer and find that such a construction of the answer is strained and at odds with their entire defense as appearing in the record.

Finally the Grattons seek to establish noncompliance by the doctors and the hospital with orders of the court covering answers to interrogatories and production of records. Suffice it to say that this is not a bona fide issue on appeal in the instant case. In any event all discovery must come to an end sometime and 3-1/2 years seems an adequate allowance of time. The district court ordered all discovery completed by December 1, 1974. The Grattons simply were unable to produce any evidence of malpractice in 3-1/2 years and their claim must fail.

The summary judgment of the district court is affirmed. This cause is remanded to the district court for further proceedings on the claim of the hospital against the Grattons for payment of the balance of the hospital bill.

_____
                                    Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 7 -