No. 86-30

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

VALORIE CLARK,

Plaintiff and Appellant,

-vs-

TOM E. NORRIS, M.D.

Defendant and Respondent.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John W. Mahan argued, Helena, Montana
Overfelt Law Firm; Lee Overfelt argued, Billings,
Montana

For Respondent:

Boone, Karlberg & Haddon; Randy Cox argued and Sam
Haddon argued, Missoula, Montana

Submitted: November 25, 1986

Decided: March 10, 1987

Filed: MAR 1 0 1987

*Ethel M. Harrison*

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This case was tried to a jury in the First Judicial District in and for Lewis and Clark County, Montana. The defendant doctor was found not negligent and the plaintiff patient appeals. We affirm.

Appellant, Valorie Clark, charged defendant, Dr. Tom Norris, with medical negligence due to the perforation of her uterus during the course of a surgical procedure known as a dilation and curettage (D & C), which also resulted in damage to her small intestine. At the time of the incident, December 5, 1979, Clark was a twenty-eight year old mother of two. About six weeks after she was diagnosed as pregnant, the doctor determined the fetus was no longer alive and D & C was necessary to remove the deteriorating tissue from the uterus. This procedure is considered minor and patients are handled as out-patients. As with any surgical procedure, however, there are certain inherent risks. Perforation of the uterus is a risk of this particular procedure. The risks associated with not doing a D & C are continued bleeding, infection, and severe psychological problems.

During the procedure in this case, Norris observed a loop of bowel in the curette and immediately discontinued the curettage. He realized the uterine wall had been perforated and immediately called Dr. Johnson, a general surgeon. The two doctors performed an exploratory laparotomy to examine the small intestine and to repair any areas of damage. While the abdomen was open all remaining degenerated fetal material was removed, and the opening in the uterine wall was repaired. Clark's recovery was routine. Resection of a portion of the small bowel causes her to have chronic diarrhea which is controlled by medication.

2

Appellant claims she did not receive a fair trial because of numerous errors made by the District Court. She argues the court should have given her res ipsa loquitur instructions, should have admitted certain evidence, should have taken judicial notice of a so called "conspiracy of silence" among doctors, should not have allowed the defendant, when called as an adverse witness, to be treated as an expert witness, and should not have commented on evidence crucial to one of her theories of liability.

When a jury verdict is appealed to this Court our function is to determine whether there is substantial credible evidence to support the verdict. Holenstein v. Andrews (1975), 166 Mont. 60, 64, 530 P.2d 476, 478. We have repeatedly noted:

> The standard of review is substantial evidence. If substantial evidence supports the case of the prevailing party the verdict will stand. The evidence will be viewed in a light most favorable to the party that prevailed at trial and, if the evidence conflicts, the credibility and weight given to the evidence is the province of the jury and not this Court.

Mountain West Farm Bureau Mutual Ins. v. Girton (Mont. 1985), 697 P.2d 1362, 1363, 42 St.Rep. 500, 501.

Clark claims two res ipsa loquitur instructions should have been given the jury.

> Plaintiff's [Clark's] Proposed
> Instruction No. 12:
>
> If you find from the evidence that the Defendant physician caused injury to the part of the patient's body not directly involved in treatment he was administering, and that part was a healthy part in a remote place from the field of operation, these facts permit you to infer, even without any expert

3

testimony, that the Defendant was negligent.

Plaintiff's [Clark's] Proposed Instruction No. 13:

In order to find for the Plaintiff in this case, you must determine from the evidence whether the Defendant has deviated from those standards of skill and care as to which you have been instructed.

Should you find that he has so deviated in treating Valorie Clark by causing injury to organs other than those being treated, and that this negligence was the cause of the injuries complained of by Valorie Clark, you may find in favor of Valorie Clark.

The proposed instructions mistate the law. While the doctrine of res ipsa loquitur permits proof of what happened to be made by circumstantial evidence, plaintiff, nonetheless, must make a prima facie case that defendant breached a duty of care before the question goes to the jury. Subject to certain exceptions, there must be expert testimony to establish negligence in a malpractice action. Collins v. Itoh (1972), 160 Mont. 461, 470, 503 P.2d 36, 41. The mere happening of an accident, in itself, is not evidence of negligence in the ordinary negligence action. Nor is the mere fact of injury or the occurrence of a bad result, standing alone. The law does not require that for every injury there must be a recovery of damages, but only imposes liability for a breach of legal duty by defendant, proximately causing injury to the plaintiff. Negaard v. Estate of Feda (1968), 152 Mont. 47, 52, 446 P.2d 436, 439-440. Thus the instructions were properly refused.

We emphasize application of the doctrine of res ipsa loquitur does not permit the jury to presume negligence of

4

the defendant, thus shifting the burden from plaintiff. We point out that use of the terms "inference" and "presumption" interchangeably results in confusion as to their legal significance. If res ipsa loquitur is applicable in a medical malpractice case, there is no presumption of negligence.

The doctrine of res ipsa loquitur, set out in Whitney v. Northwest Greyhound Lines, Inc. (1952), 125 Mont. 528, 533, 242 P.2d 257, 259, has been quoted extensively by this Court:

> [W]hen an instrumentality which causes injury without any fault of the injured person, is under the exclusive control of the defendant at the time of the injury, and the injury is such as in the ordinary course of things does not occur if one having such control uses proper care, then the law infers negligence on the part of the one in control as the cause of the injury.

Davis v. Trobough (1961), 139 Mont. 322, 326, 363 P.2d 727, 729. Negaard, supra at 53, 446 P.2d at 440. See also Northwest Airlines, Inc. v. Rowe (8th Cir. 1955), 226 F.2d 365, 369.

In Negaard, supra, we declined to apply the doctrine of res ipsa loquitur because there was no evidence to show the result ordinarily would not have occurred had the defendant exercised due care, or that the result was not to be anticipated. At 51-52, 446 P.2d at 439. In fact, there was much evidence to the contrary, as there is in the case before us. Our holding in Negaard requires essentially the same two part test set forth in Tangora v. Matanky (1985), 42 Cal.Rptr. 348, 352. Before the doctrine of res ipsa loquitur can be applied in medical malpractice cases, defendant must

5

prove that the result complained of rarely occurs and that it is not an inherent risk of the procedure.

Statistical evidence was introduced showing perforation of the uterus occurs in a significant number of D & C procedures. All the physicians who testified on the subject agreed that perforation of the uterus is a known risk of a D & C, which can and does occur, despite the exercise of proper care. Dr. Gard, Clark's expert witness, who has far fewer years experience than Dr. Norris, testified he had had the same bad result twice. Yet he said he did not consider himself to have been negligent. He did not testify the bad result would not have occurred if proper care had been used. The District Court properly refused to give Clark's res ipsa instructions as she did not show perforation of the uterus rarely occurs during a D & C, or that perforation of the uterus is not an inherent risk of a D & C.

Clark claims the District Court should have admitted the report of the liability claim Norris provided to his insurance carrier, and the incident report prepared by St. Peter's Hospital for its attorneys. Norris argues the liability claim falls within the attorney-client work product exception to discovery pursuant to Rule 26(b)(3), M.R.Civ.P. and Kuiper v. District Court (Mont. 1981), 632 P.2d 694, 38 St.Rep. 1288. Clark argues it is not protected, citing Cantrell v. Henderson (Mont. 1986), 718 P.2d 318, 43 St.Rep. 745. Norris's report of liability claim was filed _after_ Clark had filed her claim with the medical/legal panel. He argues it was filed in anticipation of litigation.

In order to come within the qualified immunity from discovery pursuant to Rule 26(b)(3), M.R.Civ.P., it must be determined whether, in the light of the nature of the document and factual situation in a particular case, the document can fairly be said to have been prepared or obtained

6

because of the prospect of litigation. State ex rel. Corbin v. Weaver (Ariz. 1984), 680 P.2d 833, 839; Status Time Corp. (D.C.N.Y. 1982), 95 F.R.D. 27, 29. A report from the insured to the insurer subsequent to the institution of a suit is within the immunity, when it has been prepared because of the prospect of litigation. Bredice v. Doctor's Hospital, Inc. (D.C. D.C. 1970), 50 F.R.D. 249, 251, Hickman v. Taylor (1947), 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451.

Section 27-6-301, MCA, of the Montana Medical Legal Panel Act provides:

> Claimants **shall** submit a case for the consideration of the panel **prior** to filing a complaint in any district court . . . (Emphasis added.)

This section makes submission of the case to the Panel mandatory prior to the claimant's filing a complaint in court. Proceedings before the panel therefore are a condition precedent to and an integral part of the litigation process. Kuiper, supra, at 700, 38 St.Rep. at 1294. There is no doubt that upon submission of a case to the Montana Medical Legal Panel there exists the prospect of litigation; otherwise the proceedings before the Panel would have no meaning.

In this case, claimant Clark filed and submitted her case to the panel **prior** to the filing by Norris of his report of the malpractice claim with his insurance carrier.

We hold that the report of Norris to his insurance carrier made subsequent to the initiation of the Montana Medical Legal Panel proceedings was in anticipation of litigation and entitled to the qualified protection from discovery pursuant to Rule 26(b)(3), M.R.Civ.P.

It is further noted that Norris answered four separate sets of interrogatories and his deposition was taken.

Depositions of numerous physicians and health care personnel connected with the case were taken. There is no evidence indicating the report to the insurance carrier contains statements which are contradictory to any other evidence gathered. Clark had access to Norris's records, the clinic records, and the hospital medical records.

Next we consider the hospital's incident report. While there are certain communications between a hospital and its attorney which are protected, the attorney-client relationship does not automatically give rise to immunization of every piece of paper a hospital files with its attorney. A privilege cannot be created in a subject matter merely by transmitting it to an attorney. When a person employed by a corporation is instructed to make a report, the privilege of that report is to be determined by the employer's purpose in requiring the report. If the employer directs the taking of a report for confidential transmittal to its attorney, the communication may be privileged. Sierra Vista Hospital v. Superior Court (1967), 56 Cal.Rptr. 387, 392.

The record is not clear as to the purpose of the report in question. The hospital administrator testified hospital administrative policy required an incident report. The administrator keeps a copy of the report on file "indefinitely" and forwards the report to the hospital's attorney, regardless of whether litigation on that particular incident ever materializes. We are not persuaded of the requisite confidential nature of the reports necessary to warrant their immunity from discovery afforded an attorney-client relationship. There is no testimony as to their purpose and we cannot read into the record something which is not there. In today's litigious society, it is too easy to argue everything is done in anticipation of

8

litigation, thereby narrowing the open discovery policy of the Montana Rules of Civil Procediure.

Notwithstanding, any error is harmless in this case. Clark made no showing of "substantial need of the [report] in the preparation of [her] case," nor did she show that she was "unable without undue hardship to obtain the substantial equivalent of the [report] by other means." Rule 26(b)(3), M.R.Civ.P. In fact there were a number of alternatives she could have pursued. The scrub nurse who made out the report could have been deposed and called to testify. Clark could have filed a motion to produce. Norris could have been questioned about whether he had written any comments on the form or whether he had ever seen one of the forms. Any prejudice suffered by Clark is not a result of the District Court's refusal to allow discovery of the incident report.

Clark predicates error on the District Court's refusal to take judicial notice of the so-called conspiracy of silence in the medical community. Rule 201(b), M.R.Evid. says:

> [A] fact to be judicially noticed must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.

The statement made by Clark's counsel does not fall within the category of the type of facts which can be judicially noticed. Examples of the kinds of facts which are generally known and can be judicially noticed found in Montana case law include the fact that wet floors are slippery, Clark v. Worrall (1965), 146 Mont. 374, 380, 406 P.2d 822, 825; "there is a vast difference between profit and gross receipts," State ex rel. Schultz-Lindsey v. Board of

raised at trial or in chambers, although Clark had an opportunity to do so either time. Because there is no evidence this failure affected her right to a fair trial, we will not consider this alleged error.

The jury verdict is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

_____
The Honorable Douglas G. Harkin
Judge of the District Court
sitting for Mr. Justice Frank
B. Morrison, Jr.

12

Equalization (1965), 145 Mont. 380, 401, 403 P.2d 635, 646; or that on the death of the governor the lieutenant governor becomes governor. Holtz v. Babcock (1964), 143 Mont. 341, 370, 389 P.2d 869, 884. Whether or not there is a conspiracy of silence in the medical community is a subject of considerable debate.

In the same vein, Clark's claim the District Court's comment on certain testimony destroyed her theory likewise is without merit. Clark called Norris as an adverse witness. During his testimony the court permitted him to "answer fully," or explain his answer, because he was an expert. "[A] trial judge's determination of the qualifications of a witness is conclusive unless shown to be an abuse of discretion or a clear error of law." Soo Line Railroad Co. v. Freuhauf Corp. (8th Cir. 1977), 547 F.2d 1365, 1374. Clark argues Norris was not called as an expert, and as an adverse witness he should not be allowed to explain his answers because she, then, had no control over her main witness. In at least one previous Montana case, a doctor who also was a defendant, testified as an expert witness. Maki v. Murray Hospital (1932), 91 Mont. 251, 266, 7 P.2d 228, 232.

Rule 702, M.R.Evid. permits "a witness qualified as an expert by knowledge, skill, experience, training, or education [to] testify . . . in the form of an opinion or otherwise" if this "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue[.]"

> Except perhaps in the most blatant case the jury would become helplessly mired without the aid of expert medical testimony. A physician would normally be in the best position to

10

> explain . . . Undoubtedly this would be of great benefit to the jury.

Hunsaker v. Bozeman Deaconess Foundation (1978), 179 Mont. 305, 322, 588 P.2d 493, 503.

Clark claims Norris had a chance to explain and re-explain his justification for doing what he did, thus emphasizing his defense theory and destroying her circumstantial evidence. A careful reading of the transcript convinces us this is not so. The question in the specific incident complained of was unanswerable without an explanation, because it was inartfully framed. There is no mutual exclusivity in being both an expert and the defendant. While examination of the witness may not have proceeded exactly as Clark would have preferred, there is no evidence she could not illicit from Norris those facts she considered relevant.

Although Norris did not offer opinion testimony, even had he rendered an opinion, it was not conclusive of the issue and the jury was free to accept or reject it. Richardson v. Ford Motor Co. (1973), 163 Mont. 347, 353, 516 P.2d 1153, 1156. It does not appear to have prejudiced Clark's case to have Norris explain his answers. We find no reason to preclude him from doing so.

Clark claims the District Court commented on the evidence in violation of Rule 614(b), M.R.Evid. While it is true the District Court cannot comment on the evidence, State v. Fuller (1906), 34 Mont. 12, 26, 85 P. 369, 374, it also is true that failure to object waives a claim of error unless a substantial right of the party is affected. Halldorson v. Halldorson (1977), 175 Mont. 170, 173, 573 P.2d 169, 172, Rule 103(a)(1), M.R.Evid. Objection to the comment was not