JUSTICE GRAY
delivered the Opinion of the Court.
Jack S. Dalton appeals from the grant of summary judgment in favor of Kalispell Regional Hospital by the First Judicial District Court, Lewis and Clark County. We affirm.
The following issues are presented on appeal:
1. Did the District Court err in requiring expert opinion testimony regarding standards of hospital care?
2. Did the District Court err in refusing to apply the doctrine of res ipsa loquitur?
The facts of this case relating to liability are not in dispute. Appellant Dalton was a patient of Dr. J. T. Laidlaw (Laidlaw), an orthopedic surgeon in Kalispell. Laidlaw determined that Dalton’s right hip should be replaced with a prosthetic device and decided to use the Harris-Galante I.
Laidlaw met with a representative of Zimmer-Jackson Associates, Inc. (ZJA), a company which markets prosthetic devices, on approximately September 12, 1986, to determine the proper device for Dalton’s surgery. It was determined that large sizes in the cups and reamers of the prosthetic device would be needed. The ZJA representative ordered the Harris-Galante I kit with oversized cups and reamers by telephone the same day.
Laidlaw’s office personnel called the operating room at Kalispell Regional Hospital (Hospital) on September 12, to reserve surgery *245 time for Dalton’s operation on October 2, 1986. Operating room personnel were advised that the surgery would be a right total hip replacement using the Harris-Galante I kit from ZJA. No reference to the need for large cups and reamers in the kit was made during this telephone call. Following its usual procedure, the Hospital then issued a confirming purchase order for the device.
The kit arrived at the Hospital the evening preceding the surgery. An operating room nurse inventoried the kit, checking each item against the packing list. No procedure existed by which the Hospital verified that the shipment received was the shipment actually ordered by the physician from the manufacturer.
After the surgery had begun, Laidlaw asked the nurse for a large reamer. It was discovered at that time that the kit did not contain the larger cups and reamers which had been ordered. After further inquiry, it became clear that the only kit which had been shipped by ZJA was that inventoried by the nurse; it contained only the standard size cups and reamers.
Laidlaw decided to close Dalton’s incision and terminate the surgery until the proper prosthetic device could be utilized. ZJA shipped the properly sized device later the same day. Dalton’s hip was replaced with the newly delivered device the following day.
The Hospital subsequently changed its procedure regarding verification of prosthetic devices ordered by physicians. In February, 1987, it instituted a procedure whereby the nurse assigned to the surgery checks the prosthetic device received and informs the physician if discrepancies between the special order requisition information and the shipment invoice are found.
Dalton filed a complaint against ZJA, Laidlaw and the Hospital. Settlements subsequently were entered into between both ZJA and Laidlaw and Dalton.
The Hospital moved for summary judgment asserting that Dalton had failed to name an expert witness who would testify as to the duty owed by the Hospital and a breach of that duty. Dalton admitted that he did not intend to produce expert opinion testimony regarding standards of hospital care. He contended that expert testimony was not required because the Hospital’s negligence is obvious and, indeed, admitted. He also argued that the doctrine of res ipsa loquitur applies to this case, eliminating the need for expert testimony.
On September 5,1991, the District Court entered its memorandum and order granting summary judgment in favor of the Hospital unless Dalton named a witness who would testify as to standard of care by *246 October 1,1991. No such witness having been named, judgment was entered against Dalton on October 4, 1991. This appeal followed.
Did the District Court err in requiring expert opinion testimony regarding standards of hospital care?
The District Court determined that, while exceptions exist to the general rule in malpractice actions that the standard of care must be established by expert testimony, the exceptions are not applicable in this case. Specifically, the court determined that the Hospital’s change in procedure several months after Dalton’s surgery did not establish its standard of care in October, 1986. The court concluded that the standard of care in this case was not something readily ascertainable by laypeople.
Dalton argues, first, that the Hospital’s duty to provide that which is necessary to perform surgery properly is not a matter requiring expert testimony. He relies on Montana Deaconess Hospital v. Gratton (1976), 169 Mont. 185, 545 P.2d 670, where we acknowledged an exception to the usual requirement of establishing a medical standard of care via expert testimony when the conduct complained of is readily ascertainable by a layperson.
We did recognize the exception cited by Dalton in Gratton. We refused, however, to apply that exception in Gratton, which involved the management of a staph infection following an open reduction surgery of a leg fracture, concluding that the cause of an infection is not readily ascertainable by a layperson. We similarly decline to apply the exception here.
The essence of Dalton’s argument is that the Hospital’s failure to take any action to determine the suitability of the prosthetic device, or to have any procedure in place to do so, is ample evidence from which a jury can reasonably infer negligence. We disagree. The Hospital’s lack of action is evidence of the Hospital’s lack of action and nothing more. As we stated in Gratton, “[w]hat is missing here is evidence of any standard of care against which the acts or omissions of the ... hospital staff can be measured to establish negligence ....” Gratton, 169 Mont, at 188, 189, 545 P.2d 670.
Dalton also argues that the Hospital’s own admissions of record bring the present case within the ambit of our cases holding that expert testimony in medical negligence cases is not required if a defendant’s own evidence establishes a standard of care and a deviation from that standard. He asserts that the Hospital’s evidence that it had no “checks and balances” in place in October, 1986, to ensure proper sizing and inventory of prosthetic devices and that, sub *247 sequent to the events at issue here, it inaugurated such procedures, establishes what the Hospital knew to be the applicable standard of care in October, 1986. In short, according to Dalton, no policy during the first pertinent time frame followed by a policy in the second equals an admission of an applicable standard of care during the first time frame. Aside from any questions regarding admissibility of evidence of the after-inaugurated procedure under the “remedial measures” provision of Rule 407, M.R.Evid., which we do not address here, we find this contention unpersuasive.
We have recognized the “defendant’s admissions” exception to the expert testimony requirement in several cases. In both Hunter v. Missoula Community Hospital (1988), 230 Mont. 300, 750 P.2d 106, and Hill v. Squibb (1979), 181 Mont. 199, 592 P.2d 1383, we acknowledged, but refused to apply, the exception.
In Thomas v. Merriam (1959), 135 Mont. 121, 337 P.2d 604, a physician testified to the standard of care. The defendant physician was deceased by the time of trial; however, his admissions to a member of the plaintiff patient’s family as to the procedure he followed were sufficient to establish a deviation from the standard of care.
The case before us is distinguishable from Thomas. As discussed above, Thomas involved a defendant’s admissions of the procedures he followed. Independent expert testimony established the standard of care against which the defendant’s admissions could be measured. Here, the Hospital’s “admissions” regarding its policies and procedures are matters of fact equivalent to the defendant physician’s in Thomas. Absent expert testimony establishing the standard of care, however, there is nothing against which the Hospital’s admissions can be measured. Thus, there is no way for a jury to determine whether or not the Hospital’s procedures in October, 1986, constituted a deviation from the applicable standard.
Dalton’s assertions that the policy instituted by the Hospital in February, 1987, establishes the applicable standard of care either at that time or during October, 1986, ring no less hollow for the frequency with which they are repeated. This is not an appropriate case for application of the “defendant’s admissions” exception to the general rule requiring expert testimony to establish the standard of care in medical negligence cases.
We hold the District Court did not err in requiring expert opinion testimony regarding standards of hospital care.
Did the District Court err in refusing to apply the doctrine of res ipsa loquiturl
*248 The District Court determined that the doctrine of res ipsa loquitur is not applicable here in that, under these facts, it cannot be said that the prosthetic device was under the Hospital’s exclusive control. The court also noted that application of the doctrine does not shift a plaintiff’s burden of making a prima facie case of breach of a duty of care in a medical negligence case.
Daltonis correct in asserting that res ipsa loquitur maybe applicable in certain malpractice cases in Montana. But his res ipsa loquitur argument is, to a large extent, merely an extension of his other arguments for not being required to produce an expert witness to establish a standard of care. It is here that this argument misses the mark.
Where applicable, the doctrine of res ipsa loquitur “permits proof of what happened to be made by circumstantial evidence....” Clark v. Norris (1987), 226 Mont. 43, 48, 734 P.2d 182, 185. The doctrine, if applicable in a medical malpractice case, does not permit a presumption of negligence; a plaintiff still “must make a prima facie case that defendant breached a duty of care before the question goes to the jury.” Id. In the case before us, Dalton does not seek application of res ipsa loquitur for purposes of proving what happened by circumstantial evidence; what happened is clear and undisputed. Rather, he seeks application of the doctrine in order to avoid producing the expert testimony required to establish a prima facie case of duty of care and breach thereof. Under Clark, this is an inappropriate application of res ipsa loquitur.
Furthermore, we agree with the District Court that the “exclusive control” element of res ipsa loquitur is not met under these facts. The instrumentality, if considered to be the improperly sized prosthetic device, was not under the exclusive control of the Hospital at the time of the injury. If the “instrumentality” is considered to be the communication or lack thereof — between Laidlaw, Z JA and the Hospital — it was never in the exclusive control of the Hospital. Therefore, we conclude that the doctrine of res ipsa loquitur is not applicable to the case before us; the District Court did not err in refusing to apply it.
Affirmed.
CHIEF JUSTICE TURNAGE, JUSTICES HARRISON and McDonough concur.