No. 98-080

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 209N

KEITH WARREN SMITH and

LINDA ADELE SMITH,

Plaintiffs and Appellants,

v.

WILLARD J. HULL, M.D., ROBERT J.

SCHULTZ, M.D., MICHAEL W. BRENNAN,

M.D., TIMOTHY A. SANDERS, P.A.,

BILLINGS CLINIC, DEACONESS MEDICAL

CENTER, SAM MILLER, P.T., and LYNN

YOCUM, O.T.R.,

Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Keith Warren Smith, Linda Adele Smith, Roundup, Montana (pro se)

For Respondent:

John J. Russell, Lisa A. Rodeghiero, Brown Law Firm, Billings, Montana

Submitted on Briefs: July 29, 1998

Decided: August 25, 1998

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶ **Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

¶ **Keith Warren Smith and Linda Adele Smith (Smiths), plaintiffs in the underlying action, appeal from, among other things, the District Court's summary judgment in favor of defendants Willard J. Hull, M.D., Robert J. Schultz, M.D., Michael W. Brennan, M.D., Timothy A. Sanders, P.A., the Billings Clinic, and Deaconess Medical Center (collectively referred to as the health-care providers). We affirm.**

### *Background*

¶ Smiths, acting *pro se*, commenced their action on February 28, 1994, alleging that the health-care providers committed medical malpractice in connection with rotator-cuff surgery performed in October 1990 on Mr. Smith by Dr. Hull. Smiths designated as their standard of care expert Dr. Frederick A. Matsen, III. On July 28, 1997, Smiths took Dr. Matsen's video deposition for use at trial and a transcript of the doctor's testimony was filed with the Clerk of Court. Believing that Dr. Matsen had failed to provide adequate expert testimony on the applicable standard of care for rotator-cuff surgery and as to the breach of that standard, the health-care providers moved for summary judgment. The trial court granted this motion concluding that Smiths failed to produce the requisite expert testimony on these issues.

¶ The record in this case contains nearly 600 pleadings. Smiths' notice of appeal sets forth at least 12 orders from which they wished to appeal. Notwithstanding, they address only those orders of the trial court dated January 24, 1997, denying their motion for summary judgment, the September 30, 1997 order granting the health-care providers' motion for summary judgment, the October 23, 1997 judgment of the court, and the court's November 28, 1997 order denying relief from judgment. To the extent necessary, further background and facts will be set forth in our discussion of the issues.

## *Issues*

¶ Smiths' opening brief raises 43 issues. We conclude, however, that the issues dispositive of this appeal are more properly framed as follows:

¶ 1. Did the District Court err when it granted summary judgment to the health-care providers?

¶ 2. Did the District Court err when it twice denied summary judgment to Smiths?

¶ 3. Did the District Court abuse its discretion when it ruled on certain discovery matters?

¶ **4. Did the District Court abuse its discretion when it ordered that the 1995 deposition of Dr. Matsen could not be used as evidence in this case?**

## *Discussion*

### I.

¶ *Did the District Court err when it granted summary judgment to the health-care providers?*

¶ **Under Rule 56(c), M.R.Civ.P., summary judgment is proper only when the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show no genuine issues of material fact exist and when the moving party is entitled to judgment as a matter of law. We review summary judgment rulings *de novo. Vennes v. Miller*, 1998 Mont. 23, ¶6, ___ Mont. ___, ¶6, 954 P.2d 736, ¶6, 55 St. Rep. 84, ¶6 (citation omitted). The party moving for summary judgment bears the initial burden of establishing the absence of any genuine issue of fact and entitlement to judgment as a matter of law. The burden then shifts to the nonmoving party to set forth specific facts, by affidavit or as otherwise provided in Rule 56, establishing a genuine issue of material fact. *Estate of Nielsen v. Pardis* (1994), 265 Mont. 470, 473, 878 P.2d 234, 235 (citations omitted).**

¶ **The trial court concluded that Smiths failed to establish through expert testimony the standard of care applicable to rotator-cuff surgery, that the health-care providers departed from that standard, and that such departure proximately caused Smith's injuries. We agree.**

¶ **In order to defeat a motion for summary judgment against a medical malpractice claim, the plaintiff,** *prima facie,* **must produce competent expert medical testimony**

establishing the applicable standard of care, the departure from that standard by the health-care provider, and damages caused by the departure. *Estate of Nielsen*, 265 Mont. at 473, 878 P.2d at 235-36; *Hunter v. Missoula Community Hosp.* (1988), 230 Mont. 300, 301, 750 P.2d 106, 106; *Montana Deaconess Hospital v. Gratton* (1976), 169 Mont. 185, 189, 545 P.2d 670, 672. Moreover, a "bad result alone does not constitute evidence or raise a presumption or inference of negligence," *Montana Deaconess Hospital,* 169 Mont. at 191, 545 P.2d at 673, nor may the doctrine of *res ipsa loquitur* be used to supplant the expert testimony regarding standard of care and breach thereof required in a malpractice case, *Dalton v. Kalispell Regional Hosp.* (1993), 256 Mont. 243, 248, 846 P.2d 960, 963. These rules apply also in medical malpractice cases based upon the theory that the health-care provider failed to obtain the plaintiff's "informed consent." See *Collins v. Itoh* (1972), 160 Mont. 461, 503 P.2d 36; *Negaard v. Estate of Feda* (1968), 152 Mont. 47, 446 P.2d 436 *overruled on other grounds by Burlingham v. Mintz* (1995), 270 Mont. 277, 891 P.2d 527.

¶ In the case at bar, Smiths designated as experts Dr. Matsen, board certified in Orthopedic Surgery, and Dr. Lawrence A. Cone, board certified in Internal Medicine, Infectious Diseases and Medical Oncology. A review of Dr. Matsen's deposition reveals that at no point did he articulate the applicable standard of care for rotator-cuff surgery nor did he opine that Dr. Hull or any of the other health care providers breached any standard of care. While Dr. Matsen testified as to the nature of Mr. Smith's injury and that *his* practice was to perform a procedure known as acromioplasty as part of surgery to repair a rotator cuff, he acknowledged that other surgeons performed this surgery without doing the acromioplasty.

¶ Similarly, in his deposition, Dr. Cone offered no testimony as to any applicable surgical standard of care or breach thereof. Rather, he testified as to the effects of a drug Dr. Hull prescribed for Mr. Smith, but even there failed to opine that Dr. Hull had breached any standard of care.

¶ While Smiths argue this issue at length in their briefs, they appear to take the position that requiring a medical expert to articulate the applicable standard of care and the nature of the breach thereof is simply an unnecessary exercise aimed at eliciting meaningless "rote" from the witness, and that the lack of such testimony merely goes to the weight of the evidence. Smiths are mistaken in this regard, however. Indeed, as the cases cited above clearly hold, testimony as to the applicable standard of care and as to the breach thereof are fundamental elements of a medical

**malpractice claim, without which the cause of action fails as a matter of law.**

**¶ In like manner, Smiths may not rely on the doctrine of *res ipsa loquitur* to establish their claims of medical malpractice. While this doctrine permits proof of what happened to be made by circumstantial evidence, plaintiff is nonetheless required to make out a *prima facie* case that the defendant breached a duty of care. *Clark v. Norris* (1987), 226 Mont. 43, 48, 734 P.2d 182, 185. Furthermore, as pointed out above, we have specifically rejected the notion that *res ipsa loquitur* may be used to supplant the expert testimony regarding standard of care and breach thereof required in a malpractice case. *Estate of Neilson*, 265 Mont. at 473-74, 878 P.2d at 236 (citing *Dalton,* 256 Mont. at 248, 846 P.2d at 963).**

**¶ Finally, Smiths may not avoid the requirement to offer competent expert medical testimony in support of their malpractice claims under the guise that Mr. Smith's consent to treatment was obtained via the "fraud" of Dr. Hull. While lack of informed consent may be the basis of a medical malpractice action, cases grounded in this theory must nevertheless be proven by testimony referring to an applicable standard of care and to a breach thereof. *See Collins* and *Negaard*. Furthermore, allegations of fraud must be pled with particularity, Rule 9(b), M.R.Civ.P., and failure to do so requires dismissal of the claim. *C. Haydon Ltd. v. Montana Min. Properties* (1993), 262 Mont. 321, 325, 864 P.2d 1253, 1256. Smiths' "fraud" arguments in the instant case fail on both pleading and evidentiary grounds.**

**¶ In summary, Smiths' case is devoid of any expert medical testimony as to the standard of care applicable to his medical malpractice claims and as to a breach of any standard on the part of any of the named health-care providers. Accordingly, we hold that the District Court did not err in granting the health-care providers' summary judgment motion.**

## II.

**¶ *Did the District Court err when it twice denied summary judgment to Smiths?***

**¶ On January 24, 1997, the District Court denied Smiths' motion for summary judgment. At the hearing on their motion, Smiths admitted that they did not have a**

standard of care expert at that time. The trial court, thus, correctly denied their motion. Smiths' second motion for summary judgment was denied on September 30, 1997. Again, as indicated in our discussion of the previous issue, they continued to fail in their burden to establish the applicable standard of care and breach thereof by competent expert medical testimony. We hold that the trial court did not err in denying Smiths' second motion for summary judgment.

III.

¶ *Did the District Court abuse its discretion when it ruled on certain discovery matters?*

¶ We review a district court's rulings concerning granting or denying discovery for abuse of discretion. A district court is in a better position than this Court to supervise the day to day operations of pretrial discovery. *Whalen v. Taylor* (1996), 278 Mont. 293, 305, 925 P.2d 462, 469 (citation omitted).

¶ Smiths claim fraud on the part of the health-care providers, abuse of discretion on the part of the trial court, and denial of due process in connection with two 1995 court orders quashing the depositions of Dr. Timothy D. Browne and Dr. Matsen. With respect to Dr. Browne, Smiths scheduled his deposition without checking with opposing counsel (who had a conflict because of a Medical Legal Panel hearing which had been scheduled for months). The health-care providers' counsel was forced to seek relief from the court to have the deposition quashed. Smiths had nearly two years to reschedule the deposition but failed to do so.

¶ As to Dr. Matsen, Smiths scheduled his deposition and insisted on going forward despite knowledge that opposing counsel was unavailable on this date. Again, the health-care providers were forced to seek court intervention. Although Smiths eventually deposed Dr. Matsen, he, nonetheless, failed to testify as to the applicable standard of care and breach, as discussed above.

¶ Finally, Smiths sought an order from the trial court that would have allowed them to depose Dr. Joseph P. Iannotti, a non-testifying expert. The court concluded that Rule 26(b)(4)(A)(i) and (B), M.R.Civ.P., precluded Smiths taking this deposition absent exceptional circumstances which did not exist.

¶ Smiths have failed in their burden to persuade us that they were prejudiced or that

the District Court abused its discretion in any of these rulings. Accordingly, as to this issue, we hold that the court did not err.

IV.

¶ *Did the District Court abuse its discretion when it ordered that the 1995 deposition of Dr. Matsen could not be used as evidence in this case?*

¶ **Rulings on the admissibility of evidence are within the discretion of the district court and will not be reversed by this Court absent an abuse of discretion.** *Peschke v. Carroll College* **(1996), 280 Mont. 331, 342, 929 P.2d 874, 881 (citation omitted).**

¶ **On July 17, 1996, the District Court denied Smiths' motion for leave to use a 1995 deposition of Dr. Matsen. The court subsequently also denied reconsideration of this ruling. The deposition which was the subject of Smiths' motion was taken in another case that did not involve the health-care providers and which the health-care providers did not attend. We conclude that the trial court did not abuse its discretion in denying Smiths' motion to use this deposition at trial. Without elaborating on the obvious reasons supporting the court's ruling, Smiths' argument on this issue can be disposed of with the observation that, if Dr. Matsen had something to say of importance to their case in his 1995 deposition, they certainly had more than adequate opportunity and sufficient time to put this testimony into the record two years later when they deposed him in 1997. We hold that the court did not abuse its discretion in denying Smiths' motion for leave to use Dr. Matsen's 1995 deposition.**

¶ **Having reviewed the record in this case and having considered the issues raised by Smiths and their various arguments on appeal, we are not persuaded that the trial court committed any reversible error in its rulings and orders.**

¶ **Affirmed.**

/S/ JAMES C. NELSON

We Concur:


/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER