No. 01-384

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 300N

SARAH CARLSON,

Plaintiff and Appellant,

v.

BETH E. THOMPSON, M.D.; DONALD P.

HARRELL, M.D.; and COMMUNITY MEDICAL

CENTER, INC., a Montana corporation, d/b/a

MISSOULA COMMUNITY MEDICAL CENTER,

Defendants and Respondents.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

Honorable John W. Larson, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

John E. Seidlitz, Seidlitz Law Office, Great Falls, Montana

For Respondent:

Gary Kalkstein and C. J. Johnson, Kalkstein Law Firm,

Missoula, Montana

Submitted on Briefs: October 25, 2001
Decided: December 28, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c) Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court

¶2 Sarah Carlson (Carlson) appeals from the Fourth Judicial District Court's grant of summary judgment to Beth E. Thompson, M.D. (Dr. Thompson). We affirm.

¶3 The following issue is raised on appeal:

¶4 Did the District Court err by granting summary judgment to Dr. Thompson?

FACTUAL AND PROCEDURAL BACKGROUND

¶5 Dr. Thompson is a board certified internist specializing in infectious disease who treated Carlson for an infection involving her toe (cellulitis) and underlying bone infection (osteomyelitis) in 1992. On June 27, 1992, Dr. Thompson admitted Carlson to the hospital for cellulitis associated with a neuropathic ulcer. Dr. Thompson chose to restart antibiotics Carlson had previously responded to, Clyndamycin and Gentamicin. Carlson was discharged from the hospital but readmitted on September 2, 1992, due to recurrent signs and symptoms of infection. Dr. Thompson began Carlson on an IV regimen of Gentamicin and Clyndamycin, and Carlson was discharged from the hospital. In her deposition, Dr. Thompson acknowledged that prolonged use of Gentamicin may result in vestibular side

effects, or problems with balance and equilibrium.

¶6 On September 8, 1992, Dr. Thompson examined Carlson after her home health care nurse noticed increased redness in the leg. Dr. Thompson obtained a surface culture of Carlson's infection (surface culture) which showed staph epidermitis-a surface organism-which was resistant to Clyndamycin and Gentamicin. Dr. Thompson testified that surface cultures do not necessarily reflect what is causing the infection, particularly a bone infection.

¶7 On September 24, 1992, Dr. Thompson obtained a surgical/osteomyelitis culture of Carlson's bone matter (surgical culture). She testified that the surgical culture was more accurate than the surface culture in detecting resistance to antibiotics. The surgical culture confirmed that the involved organism was resistant to Gentamicin. Consequently, Dr. Thompson discontinued the use of Gentamicin after determining that it was ineffective in treating Carlson's infection.

¶8 On September 23, 1992, Carlson began complaining of nausea, dizziness and vertigo. Two days later, she complained that she could not balance by her bedside. Approximately seven years later, Carlson filed a complaint in the Fourth Judicial District Court alleging Dr. Thompson was negligent regarding her antibiotic therapy, and that she suffered permanent neurological damage as a result. Ultimately, both parties filed motions for summary judgment.

¶9 After holding a hearing regarding the parties' motions, the District Court granted summary judgment to Dr. Thompson based on Carlson's failure to produce expert medical testimony regarding the applicable standard of care and a violation of that standard. Carlson appeals.

## DISCUSSION

¶10 Did the District Court err by granting summary judgment to Dr. Thompson?

¶11 In reviewing a grant of summary judgment, we determine whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. The party moving for summary judgment has the initial burden of establishing the absence of any genuine issue of fact and entitlement to judgment as a matter of law. The burden then shifts to the nonmoving party to set forth specific facts, by

affidavit or as otherwise provided in Rule 56, M.R.Civ.P., establishing a genuine issue of material fact. *Estate of Nielsen v. Pardis* (1994), 265 Mont. 470, 473, 878 P.2d 234, 235 (citations omitted). When there is no genuine issue of material fact because a plaintiff has failed to produce a medical expert competent to establish the applicable standard of care and a violation of that standard, summary judgment is appropriate. *Nielsen*, 265 Mont. at 474, 878 P.2d at 236; *Hunter v. Missoula Community Hosp.* (1988), 230 Mont. 300, 305, 750 P.2d 106, 109; *Montana Deaconess Hospital v. Gratton* (1976), 169 Mont. 185, 190, 545 P.2d 670, 673.

¶12 Here, Carlson admits that she did not produce an independent medical expert to establish the applicable standard of care and a breach of that standard. However, Carlson argues that she did not have to provide such testimony since the subject matter at hand is readily ascertainable by laypersons and Dr. Thompson herself provided the requisite testimony regarding the standard of care.

¶13 We have acknowledged two exceptions to the usual requirement of establishing a medical standard of care via expert testimony. First, when the conduct complained of is readily ascertainable by a layperson, expert testimony is not mandatory. *Dalton v. Kalispell Regional Hospital* (1993), 256 Mont. 243, 246, 846 P.2d 960, 961-62. However, we have refused to apply this exception to cases involving the management of infections because the cause of an infection is not readily ascertainable by a layperson. *Dalton*, 256 Mont. at 246, 846 P.2d at 962 (citing *Gratton*, 169 Mont. at 189, 545 P.2d at 672-73); *Hunter*, 230 Mont. at 305, 750 P.2d at 109. Here, the alleged negligence involves the cause and treatment of an infection and, as such, expert testimony was required to establish the standard of care.

¶14 Second, we have recognized the "defendant admissions" exception to the expert testimony requirement and do not require third party expert testimony if a defendant doctor's own testimony establishes the standard of care and departure from it. *Hunter*, 230 Mont. at 305, 750 P.2d at 109; *Dalton*, 256 Mont. at 247, 846 P.2d at 962. The crux of the issue is, then, did Dr. Thompson in fact testify to what the standard of care was and that she violated it? We conclude that she did not.

¶15 Carlson claims that Dr. Thompson established the standard of care when she testified that she discontinued the use of Gentamicin after treatment through September 27, 1992, because the surgical culture indicated that the organism was not sensitive to the antibiotic. We conclude, however, as did the District Court, that this testimony merely reflects Dr.

Thompson's personal diagnosis and treatment of Carlson's infection. We have stated that a defendant doctor's testimony as to her usual personal practice is not sufficient to establish a general medical standard of care. *Gratton*, 169 Mont. at 190, 545 P.2d at 673. Accordingly, we hold that the District Court did not err in determining that Dr. Thompson's testimony did not establish the applicable standard of care in this case.

¶16 Even if Dr. Thompson's testimony did, arguably, establish the applicable standard of care, there exists no admission or testimony indicating that Dr. Thompson violated the standard. Carlson contends otherwise, and, citing to various portions of Dr. Thompson's testimony, claims that Dr. Thompson admittedly violated the standard of care in this case when she became aware that Carlson's infection developed resistance to Gentamicin and she failed to cease use of the antibiotic. In support of her argument, Carlson points to Dr. Thompson's alleged acknowledgment that the same organism caused both the tissue and bone infections and that she continued using Gentamicin after the surface culture results of September 8 showed resistance to the antibiotic. In addition, Carlson repeatedly claims that Dr. Thompson testified that it was a "hard and fast rule" that once resistence is established, removal of Gentamicin is required.

¶17 First, we note that Dr. Thompson did not testify as to any "hard and fast" rule regarding the removal of Gentamicin. In fact, when responding to the question of whether resistance required removal of Gentamicin, Dr. Thompson responded it was " . . . <u>not</u> an absolute hard and fast rule." (Emphasis added.) Furthermore, we conclude that this testimony simply reflects Dr. Thompson's personal practice and does not in any way constitute an admission by Dr. Thompson that she violated the standard of care in this case. A defendant doctor's personal and individual method of practice is insufficient to establish a basis for an inference that she negligently departed from general medical custom and practice. *Gratton*, 169 Mont. at 190, 545 P.2d at 673.

¶18 Moreover, rather than admitting she violated the standard of care, Dr. Thompson unequivocally testified that she was familiar with the standard of care applicable in the utilization of Gentamicin and that she believed that her actions in the care and treatment of Carlson clearly adhered to the required standard. Furthermore, Carlson's other treating physicians agreed that Dr. Thompson appropriately treated Carlson's infection. Dr. Daniel E. Braby testified in his deposition that Carlson's medications were appropriately given and carefully monitored and that he had no "qualms" with how they were administered. Similarly, Dr. Dean E. Ross testified that he "absolutely" believed that the care Dr. Thompson provided to Carlson was appropriate and necessary to serve Carlson's best

interests. In contrast, Carlson provided no direct evidence that Dr. Thompson violated the standard of care in this case. We refuse to apply the "defendant admissions" exception based on Carlson's unsupported allegations of negligence when Dr. Thompson maintained, and other doctors agreed, that she complied with the standard of care. Accordingly, we conclude that the District Court did not err in holding that Dr. Thompson did not testify that she violated the standard of care.

¶19 Carlson has failed to present any evidence that would establish the applicable standard of medical care and a departure therefrom. In the absence of such evidence, there are no material issues of fact. The District Court was correct in granting Dr. Thompson summary judgment as a matter of law.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ JIM RICE